COMMONWEALTH vs. STEPHEN CASSIDY.

No. 90-P-436.

Hampshire. October 12, 1990. - December 28, 1990.

Present: KASS, FINE, & IRELAND, JJ.

Further appellate review granted, 409 Mass. 1103 (1991).

*Practice, Criminal*, Mistrial, Double jeopardy, Judicial discretion, Deliberation of jury. *Constitutional Law*, Double jeopardy. *Jury and Jurors*.

At a rape trial in which a juror revealed during deliberations that she had been the victim of a sexual assault, the judge correctly concluded that the jury had been tainted and declared a mistrial over the objection of the defendant, after affording counsel a full opportunity to be heard and considering carefully all alternatives to a mistrial. [654-657]

INDICTMENT found and returned in the Superior Court Department on December 7, 1988.

Following declaration of a mistrial by *George C. Keady, Jr.*, J., a motion to dismiss was heard by *John F. Moriarty*, J., and a question of law was reported by him.

*S. Thomas Martinelli* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. This case was reported to us by a Superior Court judge in response to a motion to dismiss an indictment on double jeopardy grounds after a trial ended in a mistrial. We must determine whether "manifest necessity" justified the declaration of a mistrial. After jury deliberations began, the jury foreperson informed the trial judge about a previously undisclosed experience of one juror that raised a question of possible juror bias. After two conferences with counsel, the judge, over defense counsel's objection,[1] declared a

---

[1] Counsel did not formally object but pressed the judge to consider using an alternate juror or jurors. We accept the finding of the second Superior

mistrial. The case was then scheduled for retrial, whereupon
the defendant sought dismissal of the indictment on the
ground that a new trial would violate his right to be free
from double jeopardy. We conclude that the trial judge did
not abuse his limited discretion in declaring a mistrial on
grounds of "manifest necessity."

The facts are not in dispute. The defendant was indicted
for rape in December, 1988. The case went to trial and to a
jury on October 26, 1989. At about 1:00 P.M. on the second
day of deliberations, during the lunch recess and after ap-
proximately seven hours of jury deliberation, the judge re-
ceived a message from the jury foreperson: "We have just
learned that one of the jurors was involved in a rape case,
and her decision is being affected by her past." Because the
court reporter and counsel were at lunch, the judge went into
the jury room with the clerk and instructed the jury to stop
deliberating, took the verdict slips, and left. About six min-
utes later, the judge received a second note from the jury
foreperson, informing him that "[n]ow the juror says she was
only molested and it never went to [c]ourt." Court resumed
at 2:00 P.M., and the judge called counsel into chambers to
discuss these two messages. The judge expressed his concern
that the juror (Juror X) had not responded when the judge
had asked all the prospective jurors if any of them had ever
been the victim of a sexual assault. Our review of the record
shows that the judge considered questioning Juror X about
the contents of the notes. He concluded, however, that, given
her failure to respond to the general question at impanel-
ment, he was not confident of Juror X's ability to carry out
her oath as a juror, no matter what she might say. Accord-
ingly, the judge dismissed the possibility of questioning Juror
X about the contents of the notes[2] or her ability to function

Court judge who reported the case that this conduct was sufficient, under
the circumstances of this case, to constitute the defendant's objection, and
we treat this matter as a mistrial granted over defendant's objection.

[2]For the purpose of our review, we accept, as the trial judge did, the
contents of these two notes as true. We do not suggest that every commu-
nication by a jury foreperson to a judge concerning a juror must be ac-
cepted at its face value without further inquiry by the judge into its verac-

as an impartial juror. The record further indicates the judge's concern about the likelihood that revelation of Juror X's previous experience during the deliberations had irreparably tainted the jury.

A brief recess followed, during which defense counsel met with the defendant and the prosecutor conferred with her colleagues in the district attorney's office. After the recess, defense counsel made clear that the defense wished to proceed with the jury that had been deliberating, and even suggested ways in which to accomplish that.[3] The judge apparently considered the impact Juror X might have had on the other jurors and decided that the jury was "too tainted to continue." He then declared a mistrial.

---

ity. Given the peculiar circumstances of this case (the nature of the charge, Juror X's failure to respond to the judge's inquiry during impanelment, the subsequent report by the jury foreperson of the alleged past experience of Juror X, and the second note from the jury foreperson after the judge had instructed the jury to stop further deliberations), however, we accept the veracity of the notes in question. More to the point, we accept the trial judge's implicit finding that the statements in the notes were true. We see no reason to depart from our usual practice of deferring to the judge who is on the scene of battle, where that judge's finding does not strike us as clearly erroneous.

[3]Defense counsel asked the judge to try to save the case in several ways. First, he asked the judge to conduct a voir dire of Juror X to find out the extent to which she had made her previous experience a part of the jury deliberations. He also asked the judge to consider selecting one of the alternate jurors and then conducting a voir dire of the remaining jurors by a show of hands to determine whether they could still render a fair and impartial verdict. Indeed, beginning jury deliberations anew with a substitute juror has been upheld as not violating a defendant's right to trial by jury. *Commonwealth* v. *Haywood*, 377 Mass. 755, 768 (1979). Further, collective questioning of jury members may be an appropriate way to determine if outside factors are affecting the jurors' judgment. *Commonwealth* v. *Jackson*, 376 Mass. 790, 799 (1978). See also *Commonwealth* v. *Haywood*, 377 Mass. at 769 ("before a juror is excused from deliberations and replaced by an alternate juror, the judge should hold a hearing and be fully satisfied that there is a meritorious reason why a particular juror should not continue to serve . . . . The judge should then consider whether, in view of all the circumstances, an alternate juror should be substituted"). As the prosecution pointed out, and the judge agreed, such a course of action could, however, lead the court into the forbidden territory of inquiry about matters transpiring in the jury room. *Commonwealth* v. *Fidler*, 377 Mass. 192, 199 (1979).

The defendant moved to dismiss the indictment on the ground that, under the particular circumstances, his right to be free from double jeopardy would be violated by subjecting him to a second criminal trial. After a hearing on the motion, a second Superior Court judge reported, under Mass.R.Crim.P. 34, 378 Mass. 905 (1979), the question whether declaration of a mistrial was warranted.

The principal issue raised here[4] is whether the first trial judge erred when he ruled that manifest necessity justified the declaration of a mistrial. "Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard first encountered in Justice Story's opinion for the Court in *United States* v. *Perez*, 9 Wheat. 579, 580 (1824)." *Oregon* v. *Kennedy*, 456 U.S. 667, 672 (1982). Accord *Commonwealth* v. *Steward*, 396 Mass. 76, 78-79 (1985).[5] "The necessity for a mistrial must be manifest;

---

[4]The defendant raises a related argument that is not in itself dispositive. He argues that his having testified at the first trial chills his right to testify at retrial, because any later testimony "must be letter-perfect with what he said at the first trial under oath." His concern is valid but does not prevent a retrial. Indeed, this concern is present in all retrials. Not only is it true that any admissions the defendant may have made in the first trial are admissible for all purposes in a retrial, *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985), but any prior testimony which tends to contradict later testimony would also be admissible. See Liacos, Massachusetts Evidence, at 135 (5th ed. 1981 and Supp. 1985). Ultimately, however, any admissions the defendant may have made at the first trial would become "but a part of the evidence to be weighed with the rest." *Brown* v. *Metropolitan Transit Authy.*, 345 Mass. 636, 638 (1963).

The defendant further contends that, by using his prior testimony, the Commonwealth would be able to make a prima facie case without calling the complainant at retrial. This argument misses the mark. The defendant testified that consensual sexual intercourse occurred between the complainant and himself. He did not testify that he used force or threatened the complainant with bodily injury, or otherwise compelled her to submit against her will. Thus, the defendant's testimony would not establish a prima facie case of rape.

[5]The double jeopardy clause of the Fifth Amendment to the Constitution of the United States protects a criminal defendant from repeated prosecutions for the same offense, *United States* v. *Dinitz*, 424 U.S. 600, 606 (1976), and is applicable to the States through the due process clause of

there must be a high degree of necessity; but it need not be absolute." *Commonwealth* v. *Reinstein*, 381 Mass. 555, 561 (1980), citing *Arizona* v. *Washington*, 434 U.S. 497, 506 (1978).[6]

Appellate deference to a "trial judge's exercise of discretion that a 'manifest necessity' exists for a mistrial" is appropriate "only if it is clear from the record that the judge has given careful consideration to the available alternatives and to the defendant's interest in having the trial concluded in a single proceeding." *Commonwealth* v. *Steward*, 396 Mass. at 79, quoting from *Barton* v. *Commonwealth*, 385 Mass. 517, 519 (1982). "The discretion of a trial judge where double jeopardy is concerned is more restricted than the discretion commonly granted to trial judges for the more routine matters that arise before, during, and after trials." *Commonwealth* v. *Steward*, 396 Mass. at 79. Accord *Jones* v. *Commonwealth*, 379 Mass. 607, 617 (1980).

There is no "crisp" formula for determining when "manifest necessity" arises. *Commonwealth* v. *Reinstein*, 381 Mass. at 560-561. *Commonwealth* v. *Steward*, 396 Mass. at 79. "Two principles emerge for guidance: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." *Ibid.* In the instant matter, the trial judge gave counsel a full opportunity to be heard, although he indicated a predisposition to a mistrial. He may well have also considered the Commonwealth's right to have a fair trial and factored the Commonwealth's right into his determination that a mistrial was warranted. *Commonwealth* v. *Steward*, 396 Mass. at 79,

---

the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784 (1969). This proscription "has long been recognized as part of the common law of the Commonwealth." *Costarelli* v. *Commonwealth*, 374 Mass. 677, 681 (1978). See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974). "[T]he Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' " *Oregon* v. *Kennedy*, 456 U.S. at 671-672, quoting from *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949). It does not guarantee "that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon* v. *Kennedy*, 456 U.S. at 672.

[6]The defense must object to the declaration of a mistrial in order to raise the double jeopardy point. See note 1, *supra.*

quoting from *Arizona* v. *Washington*, 434 U.S. at 505 (public interest affords prosecutor one full and fair opportunity to present evidence to impartial jury).

The question remains whether the trial judge gave sufficient consideration to available alternatives to a mistrial. "An exercise of sound discretion by the trial judge, particularly if it involves evaluation of the significance of juror bias, is entitled to appellate deference." *Commonwealth* v. *Denson*, 16 Mass. App. Ct. 678, 681 (1983). See and contrast *United States* v. *Pierce*, 593 F.2d 415, 419 (1st Cir. 1979) ("we recognize broad discretion in the [trial] court to determine that a jury has been prejudiced beyond repair, and we would not overturn a supported and reasoned exercise of discretion even if, on the basis of 20-20 hindsight, we might have reached the opposite conclusion"). When the trial judge considered and then refused to conduct the requested voir dire, he could have determined that there was an actual risk of implied bias. The circumstances of this case raised this risk in three ways. First, there was a question as to Juror X's ability to function impartially. Implied bias is "fact-sensitive, . . . the mere failure of a juror to disclose his or her prior experience as a criminal victim does not automatically entitle the defendant to a new trial." *Commonwealth* v. *Amirault*, 399 Mass. 617, 630 (1987). Instead, it must be "more probable than not that the juror was biased against the [defendant]." *Ibid.* However, "[i]t is . . . likely that bias would be implied to a juror who has been the victim of a similar crime and has consciously concealed that fact from the parties or the court." *Id.* at 628 n.5. Second, there was a question as to the remaining jurors' ability to proceed impartially in light of any comments Juror X could have made to them. An inquiry on voir dire could have revealed, improperly, the status of the jury deliberations. The third way in which the risk of implied bias arose was the possibility that, if the trial judge removed Juror X and allowed the trial to proceed, the remaining jurors would regard his action as disapproval or rejection of any opinions Juror X may have imparted to other jurors. See *Commonwealth* v. *Gonzalez*, 28 Mass. App. Ct. 10, 14-15

(1989). In other words, the jurors might have, inappropriately, read the judge's decision to allow the deliberations to proceed as a "silent communication" regarding the validity or applicability of Juror X's opinions to the issue of rape at trial. See *ibid.*, citing *Commonwealth* v. *Webster*, 391 Mass. 271, 275-278 (1984) (court must be careful not to interfere or signal its view of evidence).

In summary, while the trial judge was faced with a difficult decision, he gave careful consideration to arguments of counsel, and his conclusion that the jury probably sustained a taint which was not possible to eradicate was, in the circumstances, sufficient justification for the declaration of the mistrial. The motion to dismiss the indictment is to be denied.

*So ordered.*