## Commonwealth *vs.* Robert C. Beauchamp.

No. 98-P-1920.

Middlesex. January 10, 2000. - July 10, 2000.

Present: Laurence, Dreben, & Beck, JJ.

*Homicide. Evidence,* Admissions and confessions, Relevancy and materiality, Testimony at prior proceeding, Explanation of previous testimony, Unavailable witness, Self-defense. *Practice, Criminal,* Admissions and confessions, Argument by prosecutor, Assistance of counsel. *Self-Defense. Constitutional Law,* Assistance of counsel, Self-incrimination. *Witness,* Unavailability, Explanation of previous testimony.

At the retrial of a murder case, the defendant's testimony at his first trial was properly admissible as substantive evidence [598-600], or, in any event, in circumstances in which the defendant did not testify in his own defense, as prior recorded testimony [600-601].

There was no merit to a criminal defendant's claim on appeal that, at his second trial, the admission as substantive evidence of his testimony at his first trial in some way precluded him from testifying at the second trial [601-603] or infringed his privilege not to testify [603-606].

There was no basis to support a defendant's contention that his testimony at his first trial, admitted substantively at his second trial, had been "coerced." [606-608]

At a murder trial, assertedly misleading statements in the prosecutor's closing argument were based on the evidence and reasonable inferences therefrom. [608-609]

A criminal defendant, convicted of murder in the second degree, did not demonstrate that his trial counsel had provided ineffective assistance. [609-612]

INDICTMENT found and returned in the Superior Court on September 15, 1971.

Following review by the Supreme Judicial Court, 424 Mass. 682 (1997), the case was tried before *Thayer Fremont-Smith,* J.

*Russell C. Sobelman* for the defendant.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

Laurence, J. Oliver Wendell Holmes, Jr.'s, most famous

maxim — "The life of the law has not been logic: it has been experience"[1] — cannot, of course, be taken literally. Law without logic — in the most fundamental sense of objective, practical, and consistent analysis and reasoning — will be law in a vacuum, formless and insubstantial.[2] Twice-convicted (of second degree murder) defendant Robert C. Beauchamp has presented us with an intricately woven yet diaphanous fabric of contentions — primarily that the Commonwealth's use in his second trial of his testimony from his first trial violated his constitutional rights — which is rent by the application of commonsense logic and established legal precedent and which, like a vacuum, lacks substance. A fairly lengthy recitation of the factual and procedural background of the defendant's present appeal from his most recent conviction is unfortunately necessary to appreciate the threadbare quality of his arguments.[3]

1. *Background.* On August 5, 1971, the defendant himself called the Arlington police to report that he had just shot Charles McGrath in the defendant's third floor apartment in Arlington. Upon their arrival, the police found the victim shot dead and lying on his back, with his keys a few inches from his right hand, on a second floor landing. The landing was situated at the bottom of a flight of stairs that led to a hallway, at the end of which was the defendant's apartment. The defendant was advised of his Miranda rights upon police entry into his apartment. He told investigating officers that the victim had been blackmailing him and that he had fired in self-defense when the victim attacked him with a large knife during an argument over further blackmail. Released on bail, the defendant fled to California but was soon rearrested and brought to trial on a first degree murder charge in early 1973.

The Commonwealth established at that first trial that the

[1]Holmes, The Common Law 1 (1881).

[2]Holmes himself recognized, in the very paragraph in which that classic line appears, that logic *is* one of the necessary "tools" for understanding the law; and one page later that "manifest good sense" is a template for evaluating legal rules. *Id.* at 1, 2. See Cardozo, The Nature of the Judicial Process 32-36, 112, 140-141 (1921).

[3]The facts are largely taken from *Commonwealth* v. *Beauchamp*, 424 Mass. 682 (1997), the defendant's various pretrial and posttrial motions, and undisputed facts in the record. Since the defendant is contending that the evidence was insufficient to support the verdict of second degree murder, we summarize it in the light most favorable to the Commonwealth. *Commonwealth* v. *Coonan*, 428 Mass. 823, 824 (1999).

victim had been shot five times at close range. Medical evidence indicated that one shot had been fired from behind the victim, apparently as he had turned to escape the fusillade. Two of the bullets had a downward trajectory, as if the shooter had stood over the victim and fired into his chest. No fingerprints were found on the knife allegedly wielded by the victim. A neighbor testified that he had heard the shots, which were not fired in rapid succession but rather with pauses before the third and the fourth shots.

The defendant testified and admitted shooting the victim but claimed he had done so only to protect himself against the victim's violent knife attack after retreating as far as he could in his apartment. He testified that the origin of the deadly encounter had been the victim's theft of a national merit scholarship examination in 1966, a copy of which he had given to the defendant. By means of the stolen document, the defendant achieved a high score on the actual examination, obtained a scholarship, and was admitted to a prestigious university. The victim, however, scored poorly on the examination and ended up at a lesser institution. Embittered, the victim proceeded to blackmail the defendant for several years with threats of exposure regarding the stolen exam. The defendant had complied with the extortion until a few days before the fatal incident. On the night of the shooting, a heated fifteen-minute argument took place after the victim had come to the defendant's apartment to demand more money immediately. When the defendant refused to pay, the victim rushed at the defendant with a foot-long knife (which he held in a napkin) screaming that he was going to plunge it into the defendant as far as he could to kill him. Only after retreating until he was up against a wall, with the knife a few inches from his body, did the defendant, "scared out of [his] mind," fire several shots in rapid succession from a recently purchased .38 caliber revolver which he somehow was able to retrieve from his open briefcase as he backed away from the uplifted knife. The victim then stumbled out of the apartment.

On February 21, 1973, the jury convicted the defendant of murder in the second degree, for which he received the mandatory sentence of life imprisonment. G. L. c. 265, § 2. The defendant did not appeal his conviction, and in early 1974 he escaped from prison. He was not apprehended until 1981 in California, where he was charged with committing a number of

Federal crimes. After serving Federal sentences in California and Illinois, he was returned to Massachusetts on a Governor's warrant. He proceeded to file a series of motions for a new trial alleging various errors in his 1973 trial. One of those claims — that the trial judge's instructions on self-defense could have been interpreted by the jury to shift the burden of proof on that issue to the defendant — was discerned by the Supreme Judicial Court to be a ground on which the defendant's conviction should be set aside. *Commonwealth* v. *Beauchamp*, 424 Mass. 682 (1997).

The court observed that the law regarding the proper charge with respect to claims of self-defense had changed in the defendant's favor while he was in hiding from the authorities. *Id.* at 685, citing *Mullaney* v. *Wilbur*, 421 U.S. 684, 704 (1975), and *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 687-689 (1976). Although the instructions at his trial had not explicitly stated who had the burden of proof on self-defense and were correct under the then state of the law, the court concluded that, read as a whole, they might have led a reasonable juror to believe that the Commonwealth was not required to prove the absence of self-defense beyond a reasonable doubt, as mandated by the cited cases. Because *Rodriguez* applied retroactively, even if the defendant had unsuccessfully appealed earlier, his conviction remained susceptible to attack on this ground on collateral review. 424 Mass. at 685-686. The court accordingly remanded the case for a new trial.

Prior to his new trial, on the charge of second degree murder only, the defendant filed a motion to exclude his 1973 testimony, which the Commonwealth had indicated in a motion in limine it intended to introduce in its case-in-chief. As the sole ground for his motion, the defendant reiterated a contention he had begun making in his flurry of new trial motions following his rendition to Massachusetts: namely, that his 1973 testimony had been inaccurate, indeed "perjured," at the behest of officials of the Federal Bureau of Investigation (FBI), Central Intelligence Agency (CIA), State Department, and White House. The "perjury" had been contrived in order to conceal a complex "scam" by the defendant, the victim, and a third person, with Federal connivance, to defraud and embarrass the Soviet Embassy in Washington by selling it false copies of the so-called "Pentagon Papers." (See *Gravel* v. *United States*, 408 U.S. 606, 608 [1972]; *United States* v. *Liddy*, 542 F.2d 76, 78

[D.C. Cir. 1976].) The killing had actually occurred, he averred, as a result of the victim's angry belief that the defendant had cut the victim out of his rightful share of the money mulcted from the Soviets.

The defendant's motion to exclude requested, in the alternative should his former testimony be introduced, that he be allowed to subpoena and secure the attendance (with public funds) of a large number of out-of-State witnesses. These individuals were vital to his case, the defendant asserted, in order to "explain his inaccurate, former testimony at the first trial," to verify the "real reasons" behind the victim's death, and to rebut the Commonwealth's position that the defendant had recently fabricated his present version of the facts surrounding the killing.[4] The defendant also claimed that these witnesses could testify to the "cover-up" associated with the killing, including the "promises and inducements made" to him regarding his testimony at the first trial as well as the clandestine government facilitation of his escape from prison.

Following an evidentiary hearing, the trial judge denied the defendant's motion in its entirety,[5] and the defendant's retrial proceeded. In his opening, defense counsel presented an outline of the defendant's self-defense case that essentially tracked the defendant's 1973 testimony. Nevertheless, counsel attempted during trial to block the use of the prior testimony by arguing that it was hearsay and could be admitted as an exception only

[4]Among the "witnesses" the defendant sought to bring in were former President and CIA Director George Bush, former Secretary of State Henry Kissinger, former Presidential aide John Ehrlichman, former Pentagon employee Daniel Ellsberg, former Massachusetts Governor Edward King, former President Nixon's son-in-law Edward Cox, former FBI Director L. Patrick Gray, former CIA Director Richard Helms, judge and former CIA General Counsel Stanley Sporkin, assorted FBI, CIA, Department of Justice, and Watergate prosecution officials, and the former chief of the Soviet Union's KGB "station" in New York.

[5]Only the addendum to the original motion appears in the record. At the hearing on the motion, defense counsel conceded that the Commonwealth could use the defendant's earlier testimony to impeach the defendant, were he to take the stand at the second trial. Defense counsel argued that, without the out-of-State witnesses to explain the defendant's contradictory testimony at the first trial, he would be prevented from testifying on his own behalf at the second trial regarding the Pentagon Papers caper as explanation for the homicide. So far as we can tell from the record presented, no argument was ever made that the use of the defendant's former testimony in any way impaired his constitutional privilege against self-incrimination or his right to remain silent.

upon the Commonwealth's proof of the defendant's unavailability. See *Commonwealth* v. *Childs*, 413 Mass. 252, 260-261 (1992). That hearsay requirement could be satisfied, counsel contended, only if and when the defendant actually refused to testify, by invoking his privilege against self-incrimination when it came time for the defense to put in its case, if any. See *Commonwealth* v. *Ortiz*, 393 Mass. 523, 529-530 (1984).

The prosecutor successfully rebuffed this effort, first by citing G. L. c. 233, § 20,[6] to establish that the defendant was unavailable; but also by arguing that, in any event, the defendant's former testimony constituted an admission of a party opponent which is not governed by the hearsay rule and has no unavailability requirement. See *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985); Liacos, Massachusetts Evidence § 8.8.1 (7th ed. 1999). At no time before or during trial did the defendant or his counsel assert that the admission of the former testimony was irrelevant or would in any way violate his privilege against self-incrimination or his right to remain silent.

Shortly after the Commonwealth began reading his prior testimony into the record,[7] the defendant interrupted the proceedings by making a pro se motion for a mistrial. During a hearing outside the jury's presence, he argued that his counsel had been ineffective and neglectful in preparing for trial by failing to subpoena for authentication certain FBI, CIA, and State Department records allegedly supportive of the revised story (see *supra* at 594-595) which he urgently wanted to tell the jury. At that point, the defendant's counsel informed the judge that he had consistently "recommended very strongly" to the defendant that he should not testify at all; telling his changed story, counsel had advised the defendant, would create "a high

---

[6]General Laws c. 233, § 20, as appearing in St. 1983, c. 145, states, in pertinent part, "The defendant in . . . [any] criminal proceeding shall, at his own request, but not otherwise, be allowed to testify . . . ." On appeal, the defendant does not controvert the Commonwealth's reliance on this statute or otherwise raise the objection that the judge made a premature ruling of his unavailability, but it would be without merit in any event. See *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985).

[7]The testimony was placed on the record using the original first trial transcript (redacted to omit irrelevant and inadmissible matters) by having one assistant district attorney read the questions posed to the defendant, on both direct and cross-examination, while another assistant district attorney read the defendant's answers. Defense counsel objected to that manner of introduction, asserting that the defendant should be allowed to read his own answers, but this issue has not been raised on appeal.

probability" of a guilty verdict on the second degree murder charge.

The defendant nonetheless persisted in his complaint that counsel's failure to obtain those documents "effectively precluded [him] from testifying on his own behalf," because they were "absolutely critical" to the case he wanted to present in order to rebut the "perjur[ed]" testimony from his first trial. Without those documents to "corroborate" the admittedly "bizzare[]" details of his new version of events, "the jury would almost certainly find [that] testimony to be not credible." In sum, the Commonwealth's use of his former testimony combined with counsel's documentary neglect had the chilling effect of "den[ying] my right to testify in my own defense at my own trial."[8]

The judge denied the defendant's motion for a mistrial, reiterating his pretrial ruling on the admissibility of the defendant's prior testimony and his refusal to allow the defendant to subpoena numerous Federal witnesses. The judge also took pains to emphasize to the defendant his absolute right to testify. The Commonwealth then completed reading in the defendant's earlier testimony and rested.[9] The defendant filed a motion for a required finding of not guilty of the charged crime of second degree murder. Upon its denial, the defense rested without calling any witnesses. The next day, the jury (having received correct instructions from the judge, including repeated admonitions that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense) found the defendant guilty of second degree murder.

The defendant raises several issues,[10] most vigorously that the trial judge erred in allowing the Commonwealth to introduce

---

[8]The defendant's brief on appeal contains, with no apparent sense of paradox, both the argument that his constitutional right to testify in his own behalf had been undermined and the assertion (not presented to the trial judge) that his right to remain silent and not incriminate himself had been violated.

[9]The prosecution's case rested not only on the defendant's prior testimony but also on the testimony (both live and in the form of the first trial transcript) of acquaintances of the defendant and the victim, nearby neighbors, investigating police officers, forensic experts, and pathologists. The defendant's former testimony was introduced at the end of the Commonwealth's presentation.

[10]The defendant filed various posttrial motions, both through counsel and pro se, including a renewed motion for a required finding and a motion for a new trial (which asserted ineffective assistance of counsel on the same basis

his "coerced perjured" prior testimony in its case-in-chief. There was no error, however, in that or in any other respect, and we affirm his conviction.[11]

2. *Prior testimony as admission.* It is well established that the prior trial testimony of a party, including a criminal defendant, is admissible as substantive evidence at a subsequent trial, regardless of the testifier's availability. "It is merely a straightforward application of the rule admitting statements of a party-opponent that the testimony of a defendant in a criminal trial will be admissible against him in later trials where a conviction is followed by a reversal and a new trial." Liacos, Massachusetts Evidence § 8.8.2, at 501. See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 243 (1998) ("A party's admission is excluded by definition from the hearsay rule. Proposed Mass. R.Evid. 801[d][2]"). Therefore, "a defendant's testimony at a former trial is generally admissible against him if relevant to the current trial." *Commonwealth* v. *Johnson*, 372 Mass. 185, 193 (1977). See *Harrison* v. *United States*, 392 U.S. 219, 222 (1968); *Commonwealth* v. *Marley*, 396 Mass. at 441; *Commonwealth* v. *Sires*, 413 Mass. 292, 305 (1992); *Commonwealth* v. *Cassidy*, 29 Mass. App. Ct. 651, 654 n.4 (1990), *S.C.*, 410 Mass. 174 (1991); *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. 386, 389 (1996); Liacos, Massachusetts Evidence § 8.8.1, at 496-498, & § 8.8.2, at 501; 8 Wigmore, Evidence § 2276(5), at 472-473 (McNaughton rev. ed. 1961); Young, Pollets, & Poreda, Evidence § 804.2, at 213-214 & n.10 (2d ed. 1998); McCormick, Evidence § 301, at 288 (5th ed. 1999).[12]

As the Commonwealth has demonstrated — and the defendant

---

as that presented on his pro se motion for a mistrial regarding his effective preclusion from testifying and which added counsel's failure to subpoena two "critical" witnesses), all of which were denied.

[11]The defendant's additional claims on appeal — ineffective assistance of counsel in various respects not presented in his new trial motion, prosecutorial misconduct in closing argument, and judicial error in denying his motions for a required finding of not guilty — are similarly without merit and are discussed at the end of this opinion.

[12]In a belated, conclusory, and insufficient manner, the defendant attempts to qualify for a narrow exception to this general rule, announced in *Harrison* v. *United States*, *supra*. In that case, a defendant's conviction was reversed because of the government's introduction at trial of the defendant's illegally obtained confessions. The court held that on a retrial the government could not introduce the defendant's testimony from the first trial because he had been induced to testify by the very error which led to the reversal of his conviction, so that the prior testimony was tainted by the same illegality as

does not challenge — the testimony from the first trial was plainly relevant to the Commonwealth's burden of proving the absence of self-defense, which it must do beyond a reasonable doubt in a case where self-defense has been put in issue. See *Commonwealth* v. *Rodriguez*, 370 Mass. at 687-688; *Commonwealth* v. *Johnson*, 426 Mass. 617, 620 (1998); *Commonwealth* v. *Whitman*, 430 Mass. 746, 755 (2000). By contrasting the defendant's description of his and the victim's actions

the confessions. 392 U.S. at 222. The defendant contends — only in his reply brief, which itself is ground for rejecting it out of hand, see note 19, *infra* — that his "perjured" first trial testimony was, in similar fashion to Harrison's, "virtually coerced" by the government. There is not, however, a shred of evidence in the record suggesting any such coercion by police or prosecution in Massachusetts, much less by the Federal officials whom he sought to implicate — indeed, in his "addendum" to his pretrial motion to exclude his prior testimony or obtain the attendance of various former government officials, he referred not to coercion but rather to "promises [and] inducements made to [him] regarding his testimony at the first trial." The defendant's invocation of *Harrison* is additionally misplaced because that exception rests on a prophylactic principle not applicable to the instant situation: preserving judicial integrity and deterring police misconduct by "the exclusion of evidence causally linked to the Government's illegal activity." 392 U.S. at 224 n.10. Further, it is an exception which our cases have consistently construed narrowly. See *Commonwealth* v. *Johnson*, 372 Mass. at 193-194; *Commonwealth* v. *Luna*, 418 Mass. 749, 751-752 (1994); *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. at 389-390. The defendant's suggestion that his testimony was "coerced" by the trial judge's self-defense instructions is illogical. Those instructions were not "illegal" when given (and might well have survived a timely appeal prior to *Rodriguez*, see *Commonwealth* v. *Beauchamp*, 424 Mass. at 685); and, having been given after the defendant chose to testify, could hardly have influenced his earlier testimony. Even if the defendant could have anticipated those instructions based on the existing state of the law regarding self-defense, we cannot possibly know and are not willing to speculate why the defendant took the stand. Cf. *Commonwealth* v. *Luna*, 418 Mass. at 752. Unlike *Harrison* — where defense counsel stated in his opening that the defendant would not take the stand and the defendant elected to testify only after the introduction of his confessions, leading the Court to conclude that, but for the introduction of the illegal confessions, the defendant would not have testified, *Harrison* v. *United States*, 392 U.S. at 225 — nothing has been brought to our attention that occurred in the first trial from which we could infer a defense perception that the defendant shouldered the burden of proof on his self-defense claim which required him to testify on his own behalf. From the moment the defendant called the police to report that he shot the victim, he vigorously asserted self-defense. His version of the events remained the same through the time he testified at his first trial. On this record, the defendant cannot plausibly contend that his earlier testimony was the tainted fruit of any extrajudicial misconduct attributable to any government official.

with the testimony of the police and experts regarding those actions and the sequence and angles of the various shots that wounded and ultimately killed the victim, as well as the testimony of the neighbor who heard the pauses between shots, the Commonwealth sought to cast serious doubt on the defendant's version of the shooting and to persuade the jury that the evidence established a deliberate murder rather than justifiable self-defense.[13]

3. *Prior testimony as hearsay exception.* The alternative basis on which the prosecution justified and the judge allowed the introduction of the defendant's first trial testimony is also well established. Prior recorded testimony of a witness is admissible in a subsequent proceeding if it is reliable and if the witness is currently unavailable to testify.[14] *Ohio* v. *Roberts,* 448 U.S. 56, 65-66, 74 (1980). *Commonwealth* v. *Mustone,* 353 Mass. 490, 492 (1968). *Commonwealth* v. *DiPietro,* 373 Mass. 369, 375, 380-386 (1977). *Commonwealth* v. *Bohannon,* 385 Mass. 733, 740-741 (1982). Liacos, Massachusetts Evidence §§ 8.4.2, 8.7.1. Such evidence qualifies for the exception "where the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Meech,* 380 Mass. 490, 494 (1980).

---

[13]The Commonwealth's evidence undercutting the claim of self-defense included a mutual friend's testimony that just before the shooting the defendant had called him to ask him to tell the victim to go to the defendant's apartment because the defendant wanted to talk with the victim; the neighbor's testimony that he heard two pauses, after the second and after the third shots, not a series of shots in rapid succession; police testimony that the victim was found on the second floor landing, which was a flight of stairs and a hallway removed from the defendant's third floor apartment; testimony that blood smears were found at chest level on the wall in the hallway leading from the defendant's apartment to the top of the staircase and that no fingerprints were found on the knife allegedly used by the victim; and expert testimony not only that the victim was shot at close range from behind and above but also that one of the bullet wounds would have been so instantly disabling that the victim could not have walked out of the defendant's apartment, down a stairway, and then down a flight of stairs, but rather must have been shot at least once while lying prostrate on the staircase landing where his body was found.

[14]The unavailability and reliability tests are applied in order to satisfy the strictures of the confrontation clause; clearly not an issue where the defendant's own testimony is introduced in a subsequent proceeding against him. See Liacos, Massachusetts Evidence § 8.8.1, at 497-498.

See *Commonwealth* v. *Trigones*, 397 Mass. 633, 637-638 (1986); *Commonwealth* v. *Koonce*, 418 Mass. 367, 378 n.6 (1994); *Commonwealth* v. *Cyr*, 425 Mass. 89, 97 (1997). The Commonwealth may properly introduce a defendant's earlier testimony as part of its case-in-chief. *Commonwealth* v. *Marley*, 396 Mass. at 441. *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. at 389, and cases cited.

The challenged evidence here could be viewed as prior recorded testimony that satisfied all the requisite criteria for invocation of the hearsay exception. "For purposes of prior recorded testimony, a witness is unavailable if he claims his privilege against self-incrimination and the judge excuses him." *Commonwealth* v. *Koonce, supra.* See *Commonwealth* v. *DiPietro*, 373 Mass. at 380-386; *Commonwealth* v. *Canon*, 373 Mass. 494, 499-500 (1977), cert. denied, 435 U.S. 933 (1978). The defendant retained his Fifth Amendment privilege against self-incrimination throughout his second trial, explicitly indicating to the judge that he would likely not testify and in fact exercising the privilege by not testifying when given the opportunity at the close of the Commonwealth's case. Because the Commonwealth could not have called the defendant to the stand, he was "unavailable" to the prosecution (see note 6, *supra*). The defendant's prior sworn and transcribed testimony was, additionally, eminently reliable. The first trial involved the very same parties and issues — the same crime was charged and the same claim of self-defense in the same circumstances was raised. The defendant, having voluntarily offered his testimony in the first trial (his implausible claim of having been "coerced" to perjure himself being wholly devoid of record support), cannot now successfully argue that he did not have the fullest possible opportunity to develop that testimony. See *Commonwealth* v. *Meech*, 380 Mass. at 494-495 n.7.

4. *Constitutional claims.* a. *"Preclusion" of right to testify.* Unable to muster any authorities contradictory to those uniformly supportive of the evidentiary use of his prior testimony, the defendant attempts to persuade us of the novel proposition that, however well established may be the law regarding such use, in his case it was doubly erroneous. It both prevented him from exercising his constitutional right to testify in his own behalf while simultaneously violating his constitutional right not to testify. The first prong of this argument is particularly baseless. The record reveals that the defendant was

afforded, by explicit judicial invitation, every opportunity to testify, but that the serious risks of doing so — at least by presenting his new, picaresque account of the background to the killing — were obvious to both him and his counsel (see *supra* at 596-597).[15]

Further, no authority of which we are or have been made aware suggests that the prosecution's use of a defendant's prior testimony in a retrial on the same charge is in any way violative of his constitutional rights. To the contrary, we have rejected the argument that a defendant's "having testified at the first trial chills his right to testify at retrial" for fear of being inconsistent or appearing less credible. *Commonwealth* v. *Cassidy*, 29 Mass. App. Ct. at 654 n.4. "[T]his concern is present in all retrials . . . [but] any admissions the defendant may have made in the first trial are admissible for all purposes in a retrial . . . ." *Id.*, citing *Commonwealth* v. *Marley*, 396 Mass. at 441.

Perhaps most revealing of the insubstantiality of the defendant's claim to have been prejudicially precluded from testifying is to suppose that error occurred as alleged: it nonetheless could only have been harmless beyond a reasonable doubt.[16] Had the defendant testified as he persistently protested he desired to do regarding the events that led to his fatal altercation with the victim, i.e., to the conspiracy to extort money from the Soviets with official but secret Federal cooperation — indeed, even had that testimony actually been corroborated at trial by the out-of-State witnesses and documents he had tried to subpoena — it would have been of no assistance to his challenge to the Commonwealth's evidence demonstrating the absence of legitimate self-defense.

The central issue in the trial was whether the Commonwealth

---

[15]The defendant as well as his counsel must have realized that the proposed new tale, with its admission of deliberate prior perjury and of his active involvement in various other crimes surrounding the victim's killing, as well as the inevitable use of his Federal criminal convictions for impeachment purposes, all pointed to the tactical wisdom of not taking the stand but rather putting the Commonwealth to its proof.

[16]Having asserted a violation of his constitutional right to testify in his own defense guaranteed by art. 12 of the Massachusetts Declaration of Rights and by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and having preserved the issue on appeal by timely objection at trial, the defendant is entitled on this issue to have a reviewing court determine whether the allegedly unconstitutional action complained of was harmless beyond a reasonable doubt. *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696 (1983). *Commonwealth* v. *Perez*, 411 Mass. 249, 259-260 (1991).

proved beyond a reasonable doubt that the defendant either did not have reasonable ground to believe he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force; or had not availed himself of all reasonable means to avoid physical combat before resorting to deadly force; or had used excessive force, i.e., more than was reasonably necessary to defend himself in the circumstances. See *Commonwealth* v. *Evans*, 390 Mass. 144, 154 n.2 (1983). The precipitating reason for the victim's alleged knife attack — whether motivated by rage at being denied continued blackmail payments stemming from the stolen exam incident or by fury at feeling cheated of his share of the purportedly extorted Soviet payments — was immaterial to the defendant's success in convincing the jury of his defense of provocation and self-protection. What actually happened in the defendant's apartment on the night of August 5, 1971, was the only issue pertinent to the jury's consideration of his claim of self-defense, not the accidental circumstances that preceded the fateful encounter. On this score, it is "impossible for a mind not disturbed by excessive zeal to see in what respect the defendant was prejudiced." *Commonwealth* v. *Moore*, 379 Mass. 106, 109 (1979), quoting from *Commonwealth* v. *Boyd*, 246 Pa. 529, 534-535 (1914).

b. *"Violation" of self-incrimination privilege.* The defendant's alternative supposition, that the use of his testimony from the first trial violated his privilege against self-incrimination, also has little, if any, substance. The defendant was not called on to testify, did not testify, and in fact said nothing at the instant trial (as far as the triers of fact were aware). The jury were explicitly instructed by the judge regarding the defendant's constitutional right to remain silent and the fact that they could draw no negative inferences therefrom. The defendant does not explain how his privilege against self-incrimination could have been violated by its very protected exercise.

Moreover, the self-incrimination issue has been waived by the defendant, since he never raised it or invoked the privilege below in his challenges to the Commonwealth's introduction of his earlier testimony. See *supra* at 595-596 and note 5. The privilege is not self-executing. Like any right, constitutional or otherwise, it can be waived, and it has long been deemed waived by voluntary testimony in an earlier proceeding. See *Commonwealth* v. *Judge*, 420 Mass. 433, 445 n.8 (1995); *Com-*

monwealth v. *Fallon,* 38 Mass. App. Ct. 366, 374-375 (1995), *S.C.,* 423 Mass. 92 (1996).[17]

Our task, therefore, is to determine, first, whether this is the sort of case, presenting the unusual circumstance of a serious and obvious unpreserved error, which persuades us to exercise our rarely used discretion to avoid a substantial risk of a miscarriage of justice; and, second, if this is such an extraordinary case, whether the defendant has met his heavy burden of clearly demonstrating such a risk. See *Commonwealth* v. *Amirault,* 424 Mass. 618, 637-640, 645-646, 650-652 (1997); *Commonwealth* v. *LeFave,* 430 Mass. 169, 170, 173-175 (1999); *Commonwealth* v. *Eason,* 43 Mass. App. Ct. 114, 133 (1997) (Armstrong, J., dissenting), *S.C.,* 427 Mass. 595 (1998).[18]

We do not view the defendant's as one of those rare cases that qualify for the seldom-afforded exception to the waiver rule represented by the substantial risk doctrine. The challenged ruling — admitting a defendant's prior testimony given under oath as substantive evidence in a subsequent proceeding involving the same parties and issues — was not, as explained in part 4a, *supra,* error at all under the law of evidence. Consequently, it can hardly be deemed the sort of "serious and obvious error" that furnishes the only occasion for the uncommon exercise of our reserved power to redress a perceived substantial risk of a miscarriage of justice. *Amirault,* 424 Mass. at 646. The many decisions uniformly upholding exactly what the judge allowed the prosecution to do here preclude such a characterization. See

---

[17]A related doctrine — that a party, including a criminal defendant, is not permitted to raise an issue before the trial judge on a specific theory and then present that issue to an appellate court on a different theory, *Commonwealth* v. *Phoenix,* 409 Mass. 408, 415-416 n.4 (1991); *Commonwealth* v. *Rivera,* 425 Mass. 633, 636-637 (1997); *Commonwealth* v. *Silva,* 431 Mass. 401, 405 (2000) — underscores the defendant's waiver of the self-incrimination issue.

[18]*Amirault* and *LeFave* are additionally relevant here because they reiterate the principle that even constitutional rights afforded greater protection under art. 12 than under the Federal Constitution (there, the right of confrontation) can be waived and are then subject to the more difficult burden of establishing a substantial risk of a miscarriage of justice. The defendant stresses, correctly, that our courts have held that art. 12's privilege against self-incrimination is broader than that of the Fifth Amendment, see, e.g., *Commonwealth* v. *Dormady,* 423 Mass. 190, 194 (1996), but that reality does not advance the defendant's cause.

authorities cited *supra* at 598-601.[19] The defendant's objection

[19]The authorities cited by the defendant in support of his claim that the introduction of his first trial testimony violated his constitutional privilege against self-incrimination are unavailing. He relies for that proposition on *Taylor* v. *Commonwealth*, 369 Mass. 183 (1975), and *Commonwealth* v. *Martin*, 423 Mass. 496 (1996), which are not only distinguishable on their facts but also provide no logical assistance to his contention. *Taylor* did not involve the prosecution's use of a defendant's prior testimony at all, but rather unsworn statements made to the police by a youthful witness and testimony given in a Municipal Court juvenile proceeding by the same witness without the assistance of counsel or parents and without understanding what was going on. Such circumstances were properly held to make the doctrine of "waiver by testimony" inapplicable, so that the witness was able to claim the privilege on the advice of counsel at a subsequent hearing. 369 Mass. at 185-186, 189-191. *Martin* confirmed a long-standing principle that a non-defendant witness's testimony before a grand jury cannot be considered a waiver of the witness's right to claim his privilege against self-incrimination at a subsequent trial of a third-party defendant on the indictment returned by that grand jury, which was a "separate proceeding[] for the purposes of the waiver by testimony rule." 423 Mass. at 500-501. The unsurprising reason for this holding was explained in *Commonwealth* v. *Meech*, 380 Mass. at 494: "The 'prior recorded testimony' exception to the rule barring hearsay [applies] . . . where the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered. . . . The [exception would not apply to] grand jury testimony . . . subsequently offered against the indicted defendant, for he would not have had a chance to cross-examine." The secret, ex parte nature of the grand jury and the essentially uncounseled condition of the witness also play into the reason for the *Martin* rule. How the two cases (which in no way call into question the Commonwealth's right to use the defendant's prior testimony as an admission) support the defendant's position, given the different facts and procedural posture of this case (see *supra* at 602-603), is never rationally explained. Moreover, a new trial on the same valid indictment is not a "separate proceeding" but rather "the continuation of the same criminal proceeding . . . involv[ing] the same charges and the same defendant . . . ." *Luna* v. *Superior Ct.*, 407 Mass. 747, 751, cert. denied, 498 U.S. 939 (1990). Cf. *Commonwealth* v. *Richmond*, 379 Mass. 557, 558 (1980); *Commonwealth* v. *Martin*, 392 Mass. 161, 164 (1984); *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 44-46 (1992). Unlike the situations in *Taylor* and *Martin*, the Commonwealth did not argue waiver of the defendant's privilege against self-incrimination in the instant trial, and the defendant in fact "faced no restraint on his unfettered right to invoke the privilege," *Commonwealth* v. *Fallon*, 38 Mass. App. Ct. at 375, by remaining silent, a strategy which his attorney strongly advised.

The defendant additionally argues (for the first time on appeal, and only in his reply brief) that, by reading the transcript of his testimony to the jury, and

"has long since been foreclosed . . . by numerous decisions of this court and other courts." *Commonwealth* v. *DiPietro*, 373 Mass. at 375-376.

Moreover, the defendant's self-incrimination contention has no legitimate grounding on this record. First, given the thrust of his attempt to exclude his first trial testimony — that it was knowing and deliberate perjury — he cannot now be heard to complain. "[T]he commission of perjury does not fall within the protection afforded compelled self-incriminating statements." *United States* v. *Babb*, 807 F.2d 272, 277 (1st Cir. 1986). Cf. *Commonwealth* v. *D'Amour*, 428 Mass. 725, 743 (1999) ("A . . . witness has the option to tell the truth or to remain silent. He . . . does not have the option to lie").

To the extent the defendant relies on his incantation that such testimony was "coerced,"[20] there is no evidentiary basis whatsoever to conclude that he was compelled, in any constitutional or even any commonly understood sense, to testify at his first trial (see *supra* note 12 and 601). Despite his lengthy list of individuals who could supposedly corroborate his "Soviet scam-Pentagon Papers" story (see note 4, *supra*), not a single one was ever identified (in any of his motion papers, much less in any affidavit) as having "coerced" him to testify as he did. Nor was the nature or means of the purported "coercion" ever described, let alone established beyond naked assertion.

As previously noted (see note 12, *supra*), there is nothing to the defendant's argument that he was "virtually compelled" to testify in the first trial because of the state of the law regarding

---

therefore revealing that the defendant had not only been tried before, but had chosen to testify in the first trial, the Commonwealth violated his right against self-incrimination. The argument comes too late. See *Travenol Labs.* v. *Zotal, Ltd.*, 394 Mass. 95, 97 (1985); *Assessors of Boston* v. *Ogden Suffolk Downs, Inc.*, 398 Mass. 604, 608 n.3 (1986); *Ainslie Corp.* v. *Commissioner of Rev.*, 38 Mass. App. Ct. 360, 364-365 (1995). Moreover, the cases relied upon by the defendant, *Commonwealth* v. *Johnson*, 372 Mass. 185 (1977), and *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. 386 (1996), in no way support his objection. Under the authorities (see *supra* at 598-601), the oral verbatim reproduction of the former testimony was unimpeachable. Further, as noted *supra* at 603, the trial judge in the instant matter carefully instructed the jury on the defendant's right to remain silent. We presume that the jury followed his instructions. See *Commonwealth* v. *Donahue*, 430 Mass. 710, 718 (2000).

[20]The defendant's repeated statements to this effect obviously reflect his awareness that the State and Federal constitutional protections against self-incrimination are concerned only with governmentally compelled or coerced statements. Liacos, Massachusetts Evidence § 13.14.2, at 843-845, and authorities cited.

the burden of proof as to self-defense. See *Williams* v. *Florida*, 399 U.S. 78, 83-84 (1970) ("The defendant in a criminal trial is frequently forced to testify himself . . . in an effort to reduce the risk of conviction. . . . That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination"). Yet even if the circumstances at bar warranted such a perception, testimony conforming to the procedural requirements of the law is not held to be the result of the sort of "genuine compulsion" and "official[] coerc[ion]" that violate the privilege against self-incrimination. *United States* v. *Washington*, 431 U.S. 181, 187-188 (1977) (testimony given under oath pursuant to grand jury subpoena is not so coercively compelled). Compare *Williams* v. *Florida*, 399 U.S. at 82-86 (requiring defendant to give prosecution notice of intent to rely on an alibi defense and provide names and addresses of supportive witnesses is not compulsion that violates the privilege); *McGautha* v. *California*, 402 U.S. 183, 210-217 (1971) (preclusion of defendant's mitigation testimony at sentencing if he invokes self-incrimination privilege at trial in which the jury decides guilt and sentence in one process is not the kind of compelled pressure, amounting to coercion or "cruelty," violative of the privilege); *United States* v. *Nobles*, 422 U.S. 225, 233-234 & n.7 (1975) (discovery order requiring disclosure of defense notes of interviews with prosecution witnesses is not compelled self-incrimination); *Minnesota* v. *Murphy*, 465 U.S. 420, 427-428 (1984) (testimony voluntarily given under subpoena is not compelled within the meaning of the privilege, even if done without the witness realizing that he may thereby be losing the benefit of the privilege); *Colorado* v. *Connelly*, 479 U.S. 157, 170 (1986) (citations omitted) ("The sole concern of the Fifth Amendment. . . is governmental coercion. . . . [T]he Fifth Amendment privilege is not concerned 'with moral and psychological pressures . . . emanating from sources other than official coercion' "). Contrast *Mincey* v. *Arizona*, 437 U.S. 385, 398-401 (1978) (reluctant statements by helpless, wounded, drugged suspect lying prostrate in a hospital intensive care ward were involuntary and compelled for constitutional purposes); *New Jersey* v. *Portash*, 440 U.S. 450, 459 (1979) (testimony reluctantly given under threat of conviction for contempt is coerced testimony). Cf. *Commonwealth* v. *Harvey*, 397 Mass. 351, 356-357 (1986)

(agency rules requiring police employee to cooperate with internal investigation and testify truthfully do not create self-incrimination compulsion in the absence of "overt threat or direct pressure" from officials in authority).

Even were we to scrutinize this case under the "substantial risk of a miscarriage of justice" lens, we would find no such risk in any event. The defendant's responsibility for the killing was irrefutable. The Commonwealth's evidence that a deliberate murder had occurred, rather than an act of self-defense, was strong (see note 13, *supra*). The first trial testimony was (at least so the defendant asserts) a knowing aspect of counsel's trial strategy. The issue of self-defense would not have arisen at all if the defendant had declined to testify. Finally, the testimony would inevitably have been used to devastating effect to his credibility as impeachment had the defendant taken the stand with his new tale, as he has consistently and vehemently insisted he would have done had his motion to exclude that testimony been allowed. In that light, we have no serious doubt that the result of the trial would have been the same had the defendant's prior testimony not been received in evidence in the second trial. On this record, the issue of the defendant's guilt was fairly (and, we believe, correctly) adjudicated. See *Commonwealth* v. *Amirault*, 424 Mass. at 647, 650-651; *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

5. *Other issues.* a. *Prosecutorial "misconduct."* The several allegedly "misleading" statements made in the prosecutor's closing argument, unobjected to at trial, were all properly grounded in the evidence and reasonable inferences therefrom and created no error, much less any risk of a miscarriage of justice. See *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993); *Commonwealth* v. *Ashley*, 427 Mass. 620, 627 (1998). The reference to there being no issue about the date the defendant purchased the gun he used (almost three weeks before the killing) was based upon a stipulation expressly agreed to (and signed) by the defendant as well as his trial counsel. The prosecutor's use of the term "ambush" to describe the killing was fairly drawn from evidence indicating that the defendant lured the victim to his apartment (see note 13, *supra*) and began shooting upon entry of the victim, who was holding his keys rather than a knife and was shot not only while helplessly prostrate but also at angles inconsistent with having rushed toward the defendant. Contrast *Commonwealth* v. *Andrews*, 427

Mass. 434, 444 (1998). The defendant's complaint about the prosecutor's selective reading of the first trial testimony of the neighbor (unavailable at trial) who heard the sequence of the shots rests on a misreading of the neighbor's unequivocal testimony and a failure to recognize that the omitted portion was of little significance, as well as inadmissible hearsay. Finally, the charge that the prosecutor improperly stressed the pauses between the shots is frivolous, since the evidence solidly backed the prosecutor's statement that the shots were not fired in rapid succession.[21]

b. *Denial of required finding motions.* The defendant concedes that the evidence, properly viewed in the light most favorable to the Commonwealth, permitted the jury to conclude that he shot and killed the victim in circumstances not justifying self-defense. That concession is enough to send the case to the jury, because it recognizes a rational basis for finding the defendant guilty of either second degree murder or the lesser included offense of manslaughter — a determination for the jury on proper instructions, not for the judge. See *Commonwealth* v. *Martinez,* 393 Mass. 612, 613-614 (1985); *Commonwealth* v. *Woodward,* 427 Mass. 659, 662-663 (1998).[22]

c. *Ineffective assistance of counsel.* The defendant posits five instances of ineffective assistance of counsel.[23] Two of those claims of ineffectiveness — failure to object to the reading into

---

[21]The defendant's railing against the prosecutor's closing additionally fails to take into account the judge's proper (and unchallenged) instructions to the jury that the attorneys' arguments were not evidence and that the jury must decide the case solely on the basis of the evidence, as well as the correct instructions on the elements of self-defense and the Commonwealth's burden of proof thereon, which were sufficient to counteract any remote possibility of prejudice. See *Commonwealth* v. *Maldonado,* 429 Mass. 502, 508-509 (1999). Compare *Commonwealth* v. *Santiago,* 425 Mass. 491, 506 (1997).

[22]Manslaughter may not always be a "pure lesser included offense" of murder, because it requires the additional elements of reasonable provocation and heat of passion. See *Ariel A.* v. *Commonwealth,* 420 Mass. 281, 285-286 (1995).

[23]Soon after his conviction, the defendant moved for a new trial on the basis of a claim of ineffective assistance of counsel in two different respects not challenged in his appellate brief: lack of preparation by trial counsel by failing to have authenticated some twenty Federal documents that could supposedly corroborate the "Soviet scam" testimony he wanted to give; and failure to call two key witnesses, including his mother, so that the defense case had no witnesses at all. The trial judge denied this motion without a hearing, finding that the documents were irrelevant, that one of the two witnesses the defendant wanted called was unable to be located (not unsurprisingly,

evidence of the defendant's testimony at his prior trial[24] and failure to object to or counter the prosecutor's "misleading" closing argument — are null because counsel's objections would have been unavailing, the prior testimony being admissible (see *supra* at 598-601) and the prosecutorial comments falling within the scope of permissible argument (see *supra* at 608-609). The defendant could not have been harmed by counsel's supposed inaction in those respects. See *Commonwealth* v. *Brady*, 380 Mass. 44, 55-56 (1980); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 391 (1993).

The other three purported shortcomings of counsel have no merit because they reflect tactical judgments which were not manifestly unreasonable and which the defendant has failed to demonstrate deprived him of an otherwise substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974); *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979); *Commonwealth* v. *Haley*, 413 Mass. 770, 775-778 (1992). Failure to have interviewed certain FBI agents who had allegedly investigated the killing of the victim and could strengthen his Pentagon Papers theory was hardly unreasonable, for several reasons: the trial judge's denial of counsel's pretrial motion to compel their attendance at trial on the ground of the irrelevance of their testimony; the fact that such agents were not shown to have been percipient witnesses to the killing; the fact that certain heavily redacted and almost indecipherable documents apparently from FBI files relied on by the defendant do not, even if authentic, establish that such agents possessed or conveyed any relevant or admissible information on the self-defense issue; and the tactical decision of trial counsel to present a defense consistent with the defendant's first trial testimony,

given the twenty-seven year gap since the events at issue), and that there was no showing that the mother's purported testimony would have been either relevant or helpful. The defendant's motion for reconsideration of that denial was also denied; and, although the defendant filed notices of appeal from each ruling, he failed to argue the issues in his brief or at oral argument. In any event, "[o]n a claim of failure to prepare and conduct an adequate defense, 'the defendant [can] make no headway in the absence of a showing that the fault probably resulted in forfeiture of a substantial defense.' " *Commonwealth* v. *Haley*, 413 Mass. 770, 777 (1992), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 98 (1974). No such forfeiture has been demonstrated by the defendant on this record.

[24]This assignment of ineffectiveness is additionally defective for being contrary to fact, since, as noted above (*supra* at 595-596), defense counsel strove mightily to prevent such reading.

which squarely raised self-defense and would not have been enhanced even by FBI agents confirming his baroque new story.[25]

The defendant's faulting of counsel for stipulating to "highly incriminating" evidence against him — namely the knife found in his apartment, the gun he admittedly used in the killing, and the July 13, 1971, date he obtained the gun and his gun permit — is groundless.[26] He concedes that all of the stipulated evidence (which had been admitted at the first trial) could have been introduced by reading those portions of the earlier transcript that described or referred to the items. He also fails to indicate any demonstrable prejudice from the stipulation. That he had killed the victim with a gun was never a live issue at trial. That a large knife was found in his apartment could only assist his defense cause, which depended upon the jury accepting his claim that the victim attacked him with a large knife. The stipulated date of his procuring a gun permit and a gun was affirmed by him by signing the stipulation; and there is nothing in the record to support his conjecture that the date might have been earlier, except his own testimony at the first trial ("sometime in June of [19]71"), or that the somewhat later date was significantly more inculpatory.[27]

The defendant's contention that the stipulation deprived him of the opportunity to argue that the jury could draw negative inferences from the Commonwealth's destruction of the

[25]The apparent fact that the FBI had generated documents with the defendant's name on them, to which he attaches great conspiratorial significance, is, of course, not a particularly suspicious circumstance, given the defendant's commission of and imprisonment for several Federal crimes before he was returned to Massachusetts.

[26]The prosecutor informed the trial judge that all of the exhibits from the first trial, twenty-four years earlier, had apparently been destroyed. The defendant also attacks counsel's stipulating to "the autopsy" of the victim but only in a brief phrase which does not elaborate upon what he means by this cryptic criticism. The fact that the victim was fatally shot by the defendant was never challenged. The first trial transcripts reflecting the photographs of the victim, the medical examiner's autopsy report, and the examiner's testimony were all admissible in the second trial in any event, and the Commonwealth had a new medical examiner testify as well on the basis of the first trial record. The defendant's conclusory argument in this respect fails. See *Commonwealth* v. *Montez,* 45 Mass. App. Ct. 802, 807-808 n.2 (1998).

[27]The Commonwealth did not make any argument to the jury that hinged upon the relationship between the date the defendant bought the gun and obtained his permit and the date of the killing.

evidence is not supported by the cases he cites. He has failed to show any culpability on the part of the prosecution — through negligence or otherwise — with respect to the unavailability of the original exhibits. Nor has he presented any argument, much less made a demonstration, that any of this evidence — all of which he had full opportunity to inspect, test, and argue about at his first trial, contrast *Commonwealth* v. *Olszewski*, 401 Mass. 749, 753-754 (1988), *S.C.*, 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994) — would (or even might) have been exculpatory or in any way helpful in convincing a jury of his self-defense claim.[28]

Finally, the defendant's charge that counsel prejudicially "misrepresented" his case, by making an opening statement outlining the defendant's self-defense story in a manner consistent with his 1973 testimony, hardly merits further discussion. See *supra* at 601-603. Counsel's opening was a reasonable strategy in light of his realization that the Commonwealth would inevitably make the jury aware of that testimony.[29]

*Judgment affirmed.*

*Orders denying new trial motion and motion for reconsideration affirmed.*

---

[28]The defendant thus failed to satisfy his burden in a "lost or destroyed" evidence case: establishing "by concrete evidence" and not speculation the materiality of the evidence, the likelihood of its being exculpatory, and the likelihood of prejudice to the defendant's case from its absence. See *Commonwealth* v. *Noonan*, 48 Mass. App. Ct. 356, 360-361 (1999), and cases cited. As *Noonan* observed, "[O]ne has to consider that the defendant might well have been hurt rather than helped by the presence of the physical object[s]." *Id.* at 361. Also relevant is our observation in *Commonwealth* v. *Repoza*, 28 Mass. App. Ct. 321, 325 (1990): "Even [were] we [to] assign some degree of culpability to the Commonwealth [regarding the loss or destruction of evidence], it must be greatly mitigated by the procedural history of the case. There is no complaint that these items and reports concerning them were unavailable to the defendant [at the first trial]. Further, in addition to the [ten-year] time lapse [between the first trial and the retrial] . . . it appeared that the defendant had abandoned his post-conviction attack." The defendant has pointed to no authority obligating the prosecution to keep trial evidence in perpetuity on the chance that a defendant who had apparently abandoned his appellate rights by fleeing and hiding out for many years might fortuitously reappear decades later to claim that appeal.

[29]Also relevant in this respect is the fact of counsel's strategic advice to the defendant not to testify at the retrial (*supra* at 596-597 and note 15). See *Commonwealth* v. *Stewart*, 422 Mass. 385, 386-387 (1996).