## Commonwealth *vs.* Michael Noonan.

No. 98-P-1954.

Norfolk. October 15, 1999. - December 13, 1999.

Present: Kass, Kaplan, & Gelinas, JJ.

*Breaking and Entering. Practice, Criminal,* Loss of evidence by prosecution, Instructions to jury, Assistance of counsel. *Intent. Search and Seizure,* Consent.

Evidence at a criminal trial was sufficient to warrant the jury's finding the defendant guilty beyond a reasonable doubt of breaking and entering in the daytime with intent to commit a felony. [359]

At the trial of a criminal case, police officers' negligent pretrial disposal of a baseball cap found at the scene of the crime was not shown to be prejudicial to the defendant where the hat was of limited materiality, and the judge correctly declined to dismiss the complaint or to bar any reference to the hat at trial. [359-361]

There was no error, at the trial of a complaint for breaking and entering in the daytime with intent to commit a felony, in the judge's instructing the jury that a permissible inference could be that the requisite intent was to commit larceny; moreover, where the contested issue at trial was identity, not intent, there was no risk of a miscarriage of justice. [361-362]

A criminal defendant did not demonstrate that his trial counsel was ineffective in failing to move to suppress evidence seized without a warrant at an apartment the defendant shared with another, in circumstances in which the cotenant had given lawful consent to the search of the apartment: there was no likelihood that such a motion would have been allowed. [362-363]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on April 24, 1997.

The case was tried before *Joseph R. Welch,* J.

*Randi M. Potash* for the defendant.

*Melissa J. Weisgold,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Upon trial by a six-person jury in Quincy District Court, the defendant, Michael Noonan, was convicted of breaking and entering in the daytime with intent to commit a felony

and acquitted of receiving stolen property, and was sentenced to two years in a house of correction. The defendant appeals from the judgment of conviction and from the denial of a motion (and amended motion) for a new trial. Among the matters to be considered are the treatment of the defendant's motion about lost evidence, the charge to the jury on breaking and entering, and the adequacy of the assistance provided by trial counsel. We find no error.

*Basic evidence.* Barbara Dolan began to date the defendant, Michael Noonan, about January, 1996, and spent time with him in her parents' house in Norwood while the parents wintered in the South. About mid-March, 1997, Barbara and the defendant commenced living together in an apartment they rented at 479 Whiting Avenue, Dedham, furnishing the place with a TV and other items borrowed from one of Barbara's sisters who was living abroad. Soon difficulties arose between the couple. On April 16, 1997, a Wednesday, the defendant abused Barbara verbally and threatened to set fire to the apartment. Alarmed, Barbara left the apartment and spent the night (and some succeeding nights) elsewhere.

On April 18 the defendant telephoned Barbara, said he was broke and asked her for money. He said he would sell the furniture if she refused. In a second conversation that day he became agitated and very angry and castigated Barbara for getting her family involved in their problems. In the course of this conversation Barbara mentioned that the Kellys — Barbara's sister Ellen and husband Tom — were in Florida on vacation.

On Friday, April 18, Kerrie Perry, a cleaning woman, entered the Kellys' house at 155 Beacon Street, Milton, with her key, and gave it the usual cleaning, leaving it, as she said, in perfect condition.

Tom Kelly, returning alone from vacation to the Milton house late Sunday, April 20, found it in an awful state. Blaring sounds were coming out of a television set as he entered. The heat, turned up full force, was stifling. Meat and other food had been removed from refrigeration and lay, rotting and reeking, on the floor of the kitchen. A computer was stuffed into a duffel bag together with a rotting substance. Empty and broken beer bottles were strewn about. Kelly went up to the master bedroom on the second floor and found it tumbled and ransacked. He had left $1,200 in hundred dollar bills in a bureau drawer; these were gone. A baseball cap with Marlboro logo, belonging, as Kelly

thought, to no member of his family, lay under a pile of clothing.

Kelly called the Milton police, and Officer John Lank appeared promptly. Lank, going over the house, figured that the person responsible for the apparent break-in had entered through an unlocked window at the rear of the first floor bathroom which could be opened from the outside. The intruder had left muddy footprints on the toilet and floor (cleaned up after Lank left). In Lank's opinion the housebreak was exceptional: in ordinary cases the intruder leaves the premises as soon as feasible after seizing the loot; here the person had lingered and done extensive damage and outrage, suggesting that the crime was committed out of spite.

Informed of the event at the Kellys, Barbara went there the following day, Monday, April 21. Seeing the baseball hat on a pile of clothing, she told Patrick Kenney, a Milton detective who was present and in charge, that the cap belonged to the defendant, a remark she modified later to say that the hat resembled or was of the kind the defendant possessed and wore.

The defendant had been arrested early that day because of threats against Barbara's brother Matthew and others.[1] At booking, $771 was taken from his wallet, of which $700 was in hundred dollar bills.

With the defendant locked away, Barbara, Tom Kelly, and Stephen J. Murphy, a friend of the family who was a Milton police officer, went to the Dedham apartment. Using Barbara's key, they entered, intending first to recover some clothes for Barbara. In the open in the apartment they saw a new VCR with some videotapes and the box in which the VCR had come. From a pocket of the defendant's jacket slung over a chair in the kitchen, Barbara drew a pair of diamond stud earrings, later recognized by Ellen Kelly as hers and evidently taken from a bureau drawer of the Milton house. When the three quit the apartment, the earrings were left there on a table.[2] On a visit later that day where apparently the three appeared together with

[1] Subsequently, the defendant was tried and found guilty of the threats related to Matthew; the conviction was affirmed by the Appeals Court, *Commonwealth* v. *Noonan*, 46 Mass. App. Ct. 1122 (1999).

[2] It may be surmised there was some idea that material should not be removed from the scene unofficially. The later removal by Barbara and Murphy could be related to the extended restraining order mentioned in our text below.

Detective Kenney, a video store receipt was picked up from the trash basket showing an expenditure of $146.81 from a tender by the customer of $200.

Barbara secured on April 22 an extension of an emergency restraining order she had obtained against the defendant on April 19. The extended order provided that in visiting the Dedham apartment she should be accompanied by a police officer. That day Barbara and Murphy attended at the apartment and took up the earrings, which were then passed to Detective Kenney.[3]

*Sufficiency of the evidence.* It will be convenient to dispose here of the defendant's contention that the judge should have allowed motions for a required finding. The basic proof comprises evidence of motive and of calculated opportunity together with telltale proof more distinctly connecting the defendant to the crime — all to the point where a jury could find the defendant guilty of the breaking and entering beyond a reasonable doubt under the *Latimore* rule, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).[4]

*Lost evidence.* The complaint against the defendant was lodged on April 24, 1997, but he was not arraigned until November 5, 1997. On January 26, 1998, the defendant moved pro se for a report of exculpatory evidence held by the Commonwealth. The Commonwealth responded on March 5, 1998, that it had various photographs, copies of which it furnished to defense counsel. Included was a photograph of the Marlboro baseball cap. The hat itself was not mentioned. In April, 1998, the prosecutor told defense counsel he was informed by Detective Kenney that the hat was no longer held by the police department.

The defense moved to dismiss the complaint because of lost or destroyed evidence. The matter was argued on April 27 and 29, 1998, preceding trial on May 26-27, 1998. After recovering the hat (recognized by Barbara to the extent above mentioned) at the Milton house, Kenney, it appeared, had examined it for

---

[3]There is some confusion in the record about the times of the visits to the Dedham apartment and who attended with Barbara but our analysis is not compromised by the uncertainty.

[4]The basic proof is summarized from witness testimony (taking note of the cross-examinations) and exhibits offered by the Commonwealth. The defense offered a few witnesses after the Commonwealth rested, but their contribution was not significant.

the owner's name but found none; and then brought it to the police department photo lab where it was viewed under a magnifying lens and other equipment for presence of hair fibers, but none showed. The police, apparently Kenney himself, discarded the hat, perhaps in April, 1997, as not furnishing evidence.

Undoubtedly this disposal of the hat was a foolish act. The judge, however, believed the defense was not prejudiced by having lost access to the hat, and could in fact profit from the episode by suggesting to the triers that the police were sloppy in handling potential evidence. The judge denied the defense motion and said he would allow reference at the trial to the hat and the photograph of it.

We look further at the question. A defendant, complaining of lost evidence, must first "establish[] a reasonable possibility, based on concrete evidence and not on mere speculation, that the Commonwealth's actions deprived him of evidence that would have been favorable to his case." *Commonwealth* v. *Olszewski*, 416 Mass. 707, 714 (1993), cert. denied, 513 U.S. 835 (1994). There was little reason to doubt Kenney's report of the absence of hair fibers, and the defendant's suggestion that the material would hold fingerprints was weak indeed. As to the size of the hat, the photograph was available (but the defendant made no argument based upon it), and this factor in the case of a baseball cap would anyway usually be at a considerable distance from proving or disproving ownership.

If, nevertheless, it be assumed that the defendant could satisfy the cited requirement of showing a loss of evidence that was potentially exculpatory, the defendant would have a hard time answering the further question of appropriate remedy. This involves a weighing or balancing of the Commonwealth's culpability in losing the evidence, the materiality of the evidence that would otherwise become available, and the likely prejudice to the defendant. See *Commonwealth* v. *Willie*, 400 Mass. 427, 432-433 (1987). The defendant did not accuse the Commonwealth of purposefulness in the loss; he did properly claim negligence.[5] Contrast *Commonwealth* v. *Gliniewicz*, 398 Mass. 744, 749 (1986). Materiality, in one sense, was touched on in

---

[5] " 'Culpability' and 'bad faith' are not interchangeable terms. Negligence or inadvertence are less culpable than bad faith, but they are nevertheless culpable and must be accounted for in the balancing procedure." *Commonwealth* v. *Olszewski*, 401 Mass. 749, 757 n.7 (1988), *S.C.*, 416 Mass. 707 (1993).

considering the defendant's ability to shoulder his initial burden; in the sense of the significance of the loss in relation to other evidence in the case, we need mention, quite apart from the proof of motive and opportunity, the physical evidence of the earrings and the hundred dollar bills. Materiality was thus at a low ebb. See *Commonwealth* v. *Phoenix*, 409 Mass. 408, 415 (1991). As to prejudice, one has to consider that the defendant might well have been hurt rather than helped by the presence of the physical object; perhaps, as the judge suggested, it was more tactical for the defense to leave the hat itself to the imagination and cross-examine Kenney on his bad safekeeping.

We conclude that the judge did not err by exceeding the proper limits of his discretion, see *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 759 (1997), when he declined to dismiss the prosecution or to bar reference to the hat from the trial; either remedy would have been disproportionate to the Commonwealth's delict and to the loss. It was not a mistake to let the jury hear the story of the hat and decide what if any evidential weight they should assign to it in the total calculus.[6]

*Jury instruction.* Without objection, the judge charged as follows:

> "[W]hen a person breaks and enters into [*sic*] the daytime, it is an ordinary and fair inference in the absence of contrary evidence that he intends to steal. You are permitted to draw such an inference if you think it is reasonable. You are not required to draw such a conclusion but you may."

There was no issue at trial about the intruder's intent in breaking and entering; rather the defense did what it could on the question of identity. The defendant now argues there was a risk of a miscarriage of justice in the judge's remarks concerning intent. The court held in *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81 (1955), that it was a fair but not necessary inference from the fact that one breaks and enters a building at night that he intends to steal. It seems a like inference would be fair in the case of a daytime break in circumstances like the present.

---

[6]Subjoined to this point about lost evidence was a claim that the Commonwealth intentionally withheld information, thereby causing prejudice to the defendant. We consider the claim not well grounded and reject it.

See *Commonwealth* v. *Maia*, 429 Mass. 585, 587-588 (1999).[7]

*Trial counsel's choices.* By his motion for a new trial, heard on December 18, 1998, the defendant, resting on the record made to the time of verdict and offering no new proof, suggested that his trial counsel was ineffective, first, because he did not move (on constitutional grounds) to suppress the evidence gathered at the visits to the Dedham apartment. Such a motion might have been made pro forma, but it would have been unavailing. Barbara and the defendant lived in the apartment under a month-to-month unwritten rental arrangement with the owner of the house. They used the apartment just as an ordinary married couple would. Thus Barbara had the run of the place with presumptively lawful access to all parts of the apartment and its contents. So also she could give consent to a search to the same extent by other persons whether or not officers: where premises are jointly occupied, any occupant may consent "in his own right" to a search, the other occupant having "assumed the risk" of such action. *United States* v. *Matlock*, 415 U.S. 164, 171 n.7 (1974). See *Commonwealth* v. *Wahlstrom*, 375 Mass. 115, 117-118 (1978); *Commonwealth* v. *Ploude*, 44 Mass. App. Ct. 137, 140-141 (1998); 3 LaFave, Search and Seizure § 8.3(a), at 719-720 (3d ed. 1996). In the circumstances of the present case, Barbara can surely be taken to have given as much consent as she had power to give. See *Commonwealth* v. *Rexach*, 20 Mass. App. Ct. 919 (1985).

Antagonism that may spring up between the occupants does not invalidate the consent, for "the relevant analysis in . . . consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant." *United States* v. *McAlpine*, 919 F.2d 1461, 1464 (10th Cir. 1990). See *Commonwealth* v. *Martin*, 358 Mass. 282, 289-290 (1970); *Commonwealth* v. *Rexach*, *supra*; *Commonwealth* v. *Podgurski*, 44 Mass. App. Ct. 929, 930-931 (1998).

What has been said needs the qualification that an occupant may have been excluded specifically from a particular part of the premises and so could not properly search it or give consent to its search. See *State* v. *Harris*, 642 A.2d 1242, 1249 (Del. Super. Ct. 1993); 3 LaFave, *supra* § 8.3(c). In fact, the instant

[7]In the absence of evidence whether the housebreak occurred in day or nighttime, it was proper to charge the defendant with the lesser crime.

record suggests an understanding that one bureau in the apartment was reserved to the defendant alone — which, by contrast, emphasizes Barbara's freedom of access to the rest of the place and contents, including clothing.

There is nothing to the defendant's suggestion that Barbara had abandoned or cut off her connection with the apartment by April 21 when evidence was found. She still had her key with right of entry (actually clear of interference by the defendant, then in jail), and her clothes and effects were there. True, from April 16 she was in fear of the defendant, but it would be perverse to hold that she was thereby in effect ousted from the home — leaving the defendant in sole (remote) control? Following the extended restraining order of April 22, Barbara was to be accompanied when she entered the apartment, and she was so on that day, and retrieved the earrings.

The situation of Barbara's lawfully searching on her own, or consenting to a search by others, is quite different from that where police induce a civilian to make a search and then claim that constitutional protections do not apply because the person was not an official and so was not acting for the State. See *Commonwealth* v. *Jung*, 420 Mass. 675, 686-687 (1995).

The trial judge, denying a new trial on April 27, 1999, indicated that, had a motion to suppress been made, he would have denied it. The judge wrote: "It is this court's understanding that to make out a claim of ineffective assistance of counsel, based upon the failure to file such a motion [to suppress], that the defendant must demonstrate that there exists a likelihood that had a suppression motion been filed it would have likely been allowed. *Commonwealth* v. *DiPietro*, 35 Mass. App. Ct. 638 (1993)."

We have considered and found without merit the further claims of the alleged ineffectiveness of counsel for failing to move for a mistrial, conduct a reasonable investigation, request an instruction about prior inconsistent statements, object at the time to the judge's instruction on breaking and entering, and represent the defendant adequately at the sentencing.

*Judgment affirmed.*

*Order denying new trial affirmed.*