## COMMONWEALTH *vs.* ANTHONY J. MAGRI.

Berkshire. November 9, 2011. - May 31, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Robbery. Practice, Criminal,* Trial of indictments together, Severance. *Constitutional Law,* Search and seizure. *Search and Seizure,* Expectation of privacy, Consent.

A Superior Court judge did not abuse his discretion in denying the criminal defendant's motion to sever the trial of thirty-two indictments into fifteen separate trials, where, although the charged offenses varied in several respects, they were connected by details that revealed a pattern of criminal activity, in that a common motive and method united both the acquisition and the disposition of the stolen items in question. [363-365]

A Superior Court judge erred in denying the criminal defendant's pretrial motion to suppress evidence obtained from two bags that police, acting without a search warrant, had seized from an apartment where the defendant had been staying, where the defendant maintained a reasonable expectation of privacy in his bags located in a bedroom of the apartment, and where the tenant of the apartment, who validly gave consent to a search of her apartment, lacked actual authority to consent to a search of the defendant's belongings found therein; further, where this court could not say that the improperly obtained evidence did not contribute to certain of the defendant's convictions, this court vacated the convictions that relied on that evidence and remanded those matters for further proceedings. [365-369]

INDICTMENTS found and returned in the Superior Court Department on September 14, 2007.

Pretrial motions to sever and to suppress evidence were heard by *John A. Agostini,* J., and the cases were tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Elizabeth Caddick* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. Between June and August, 2007, the city of Pittsfield experienced a string of break-ins in which personal property was taken from residences, unattended vehicles, and businesses.

Jewelry, laptop computers, and household electronics were stolen from family homes; stolen personal credit cards were used to finance new purchases; and new and used items were stolen from local merchants. The defendant was indicted on thirty-two charges based on his alleged participation in the crimes. In January, 2009, a Superior Court jury convicted the defendant of twenty-three of the offenses.[1] In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed all but one of the convictions.[2] *Commonwealth* v. *Magri*, 77 Mass. App. Ct. 1117 (2010). We granted the defendant's application for further appellate review.

The defendant argues that he was unduly prejudiced by the joinder of the charged offenses in a single trial, and that inculpatory evidence that was discovered in a search of his bags violated his rights under the United States Constitution and the Massachusetts Declaration of Rights and therefore should not have been admitted. We conclude that the charges were joined properly for a single trial, but that the challenged evidence should have been suppressed. The convictions that relied on that evidence must be reversed.

*Background.* The testimony at trial came from police officers who conducted surveillance and investigated the crimes, two co-venturers, victims (including employees of businesses that were robbed), and employees of businesses where stolen goods later were sold or recovered. During the summer of 2007, the Pittsfield police department investigated a series of residential burglaries and automobile break-ins. The crimes shared numerous similarities in terms of the methods used and the items taken. One or more individuals would enter a house while the occupants were away, typically during the daytime, gaining entry through an

---

[1] Two drug possession charges were dismissed before trial, after the defendant's motion to suppress evidence that police had obtained pursuant to a warrantless search in July, 2007, was allowed. The conspiracy charge was severed. The Commonwealth entered a nolle prosequi as to two indictments charging improper receipt of a credit card and one indictment charging receipt of a stolen credit card. The defendant was found not guilty on one indictment charging breaking and entering, one indictment charging receipt of stolen property, and the lone indictment charging larceny from a building.

[2] One indictment charging larceny over $250 was reversed and remanded for the entry of a finding and sentencing on the lesser included offense of larceny under $250.

unlocked door or window. The stolen property, which could have been carried away in a bag by one person, included video game consoles, laptop computers, audio equipment, and cameras; collectibles, including designer watches and rare coins; assorted jewelry; and credit cards and identification. In one instance, a purse containing several credit cards was stolen during the day from an automobile parked on the street while its owner was at work. On three occasions, credit cards were used to make fraudulent purchases; a fourth such attempt was unsuccessful. Some of the stolen jewelry and watches were recovered by police from an area merchant.

Suspecting that the defendant was involved in the thefts, police placed him under surveillance. In August, 2007, a team of officers and detectives from the Pittsfield police department followed him and two companions, Stephanie King and Brian Signor, as the three walked a mile-long loop through residential and commercial streets. The defendant entered and left a number of stores, staying only briefly; sometimes he was accompanied by Signor, who would aid him in stealing items. On one occasion, King remained on the street as the defendant and Signor approached a house, knocked on the door, and then looked in through the windows; when the resident arrived home and asked what they were doing, the defendant pretended that he was looking for a particular person he thought lived in that house, and the three then proceeded on their way down the street.

Surveillance was in place on the afternoon of August 9, 2007, when the defendant approached an automobile parked in front of a drug store just after the driver had entered the store. With King and Signor acting as lookouts, the defendant reached through an open window and opened an interior compartment. At that point, the defendant, King, and Signor were arrested. King and Signor agreed to cooperate with police, and in statements made prior to trial, as well as in testimony at trial, each of them implicated the defendant in a number of crimes.

The Commonwealth's theory was that the defendant participated in the robberies to help finance his drug habit; King and Signor testified that the defendant regularly used "crack" cocaine with them. In support of that theory, the Commonwealth introduced evidence that, after gaining possession of the stolen

items,[3] the defendant would either trade them for drugs or try to sell them for cash to finance drug purchases. The manager of an electronics store testified that the defendant sold him a used video game console and games identical to those taken in one burglary. The proprietor of a local shop testified that the defendant sometimes offered her watches and jewelry that she eventually turned over to police, who determined that they were among the pieces stolen. Additionally, through the testimony of King and Signor, it was shown that the defendant used stolen credit cards to purchase a video game system and sneakers that subsequently were traded for drugs. Finally, there was testimony that the defendant arranged transactions in which a stolen laptop computer, bottles of liquor stolen from a package store, and a bag of charcoal stolen from a convenience store were exchanged for "crack" cocaine.

*Discussion.* 1. *Motion to sever charges.* The thirty-two indictments against the defendant were joined for trial pursuant to Mass. R. Crim. P. 9 (a), 378 Mass. 859 (1979). The judge denied the defendant's pretrial motion to sever the charges for fifteen separate trials.[4] The defendant maintains that the charges should have been severed because they "involved different crimes, times, locations, and victims," and as the crimes were not planned together (and in some cases were crimes of opportunity that had not been planned at all), they could not have constituted a common plan or scheme. He claims also that concerns of judicial efficiency in this case were minimal, as the Commonwealth would not be required to present identical evidence at multiple trials, other than certain testimony of police witnesses, King, and Signor. We conclude that the charges properly were joined for trial.

"The determination whether joinder is appropriate is committed to the sound discretion of the trial judge." *Commonwealth* v.

---

[3]In the absence of direct evidence that the defendant himself committed the burglaries, the offenses related to those crimes charged the defendant only with receipt of stolen property. The prosecutor told the jury during closing argument, "[T]he defendant is not charged with breaking into any of those houses. . . . [H]e's only charged with receiving the property that was stolen from the houses, meaning, he's only charged with having that in his possession . . . ."

[4]As is required under Mass. R. Crim. P. 9 (e), 378 Mass. 859 (1979), the judge allowed the defendant's motion to sever the indictment charging conspiracy.

*Montanez*, 410 Mass. 290, 303 (1991). Where a defendant faces charges on related offenses, "[t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." Mass. R. Crim. P. 9 (a) (3). Offenses are related, and thus properly may be joined, where the evidence "in its totality shows a common scheme and pattern of operation that tends to prove all the indictments."[5] *Commonwealth* v. *Delaney*, 425 Mass. 587, 594 (1997), cert. denied, 522 U.S. 1058 (1998), quoting *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995). In deciding a motion to sever, a judge may consider factors such as the time and place of the charged offenses, see *Commonwealth* v. *Delaney, supra*; the presence of factual similarities suggesting a common modus operandi, see *Commonwealth* v. *Ferraro*, 424 Mass. 87, 89-90 (1997);[6] and whether evidence in the trial of one offense would be admissible in the separate trial of another, see, e.g., *Commonwealth* v. *Feijoo, supra* at 494. Cf. Mass. G. Evid. § 404(b) (2012) (otherwise inadmissible evidence of defendant's bad acts may be admitted to prove, inter alia, plan or motive). Additionally, the defendant "bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." *Commonwealth* v. *Gaynor*, 443 Mass. 245, 260 (2005).

In denying the motion to sever, the judge determined that the defendant's alleged "crime spree" comprised similar offenses (theft of money or property, generally obtained by breaking into houses and automobiles) occurring within a limited geographic region during a two-month period, and noted that several of the offenses charged were perpetrated with the assistance of the same coventurers. He thus found the offenses linked by a similar modus operandi and concluded that joinder was appropriate.

We cannot say that this was an abuse of the judge's discretion.

---

[5]Rule 9 (a) (1) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), defines "related offenses" as two or more offenses that are "based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."

[6]"Modus operandi" refers to "a pattern of criminal behavior so distinctive that investigators attribute it to the work of the same person." Black's Law Dictionary 1095 (9th ed. 2009).

As stated, the theory of the Commonwealth's case was that the defendant stole valuables from individuals and businesses in Pittsfield to support a drug addiction. Although the charged offenses vary in several respects, they are connected by details that reveal a pattern of criminal activity. The burglaries that resulted in the charges of receipt of stolen property occurred mainly during the day, at times when homes and vehicles were unoccupied and where a house could be entered through an unlocked door or window, and the perpetrator of those crimes left a door or window open on departing the residence.[7] Property stolen from individuals fell into one of three categories: valuables, such as jewelry and collectibles; portable electronic devices; or credit cards and identification, all of which could be carried away by a perpetrator on foot. Stolen jewelry and electronics were either sold to businesses for cash or traded for drugs, and with one exception, stolen credit cards were used to purchase new items that in turn were likewise sold or exchanged for drugs. Similarly, property was stolen from stores that could be traded for drugs or sold to businesses that bought items secondhand, in order to finance drug purchases. Thus, a common motive and method united both the acquisition and the disposition of the stolen items. In light of the factors supporting a conclusion that the offenses constituted a larger plan or scheme, the judge permissibly concluded that they were related offenses appropriate for joinder. See *Commonwealth* v. *Sullivan*, 436 Mass. 799, 804-805 (2002).[8]

2. *Motion to suppress.* After the defendant's arrest, police came to believe that evidence linking him to the crimes was

[7]In light of the behavior observed by police while the defendant was under surveillance, these factors (along with the limited geographic scope of the crimes) support an inference that the defendant was trolling a section of Pittsfield looking for opportunities to commit thefts.

[8]We note as well that the judge's instruction to the jury offset any possible prejudice from the joinder: "[E]ach one of these indictments must be considered separately by you. They are separate indictments and you should consider them separately. If you find the defendant not guilty or guilty of any one of the indictments, it does not control your verdict with respect to the other indictments." See *Commonwealth* v. *Montanez*, 410 Mass. 290, 304 (1991). We assume that the jury followed that instruction, an assumption supported by the fact that they did find the defendant not guilty on three indictments. See, e.g., *Commonwealth* v. *Delaney*, 425 Mass. 587, 595 (1997), cert. denied, 522 U.S. 1058 (1998).

located in an apartment where he had been staying. Without securing a search warrant, two officers visited the apartment, where the tenant, Michelle Barnes, gave the officers oral and written consent to enter and search. Barnes directed their attention to two bags, located in a corner of her bedroom, that she identified as belonging to the defendant: a gray backpack and a white shopping bag resembling one that surveillance officers had seen the defendant carrying. Barnes also told the officers that the defendant no longer was welcome at her apartment — a development of which the defendant may not have been aware — because she suspected him of having stolen her air conditioner.

The officers seized the bags and took them to the police station, where, again without a warrant, police opened the bags and examined their contents. The items they found linked the defendant to several of the charged offenses, namely, the theft of sundries from a drug store, the theft of a knife from a consignment shop, and the theft of valuables, personal papers, and credit cards from two residences.

The defendant moved to suppress all the evidence taken from the seized bags, arguing that the bags had been searched in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The judge determined that, although the officers did not have a warrant to search the bags, Barnes's consent to the search of her apartment authorized the officers to search the contents of the defendant's bags. We conclude that the defendant's motion should have been allowed.

In deciding whether police conduct violates the Fourth Amendment or art. 14 of the Massachusetts Declaration of Rights, we first determine whether a search, in the constitutional sense, has taken place. See, e.g., *Commonwealth* v. *Porter P.*, 456 Mass. 254, 259 (2010) (*Porter P.*). "This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Id.*, quoting *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). Where an expectation of privacy exists, police may conduct a warrantless search only in exigent circumstances or when, as the Commonwealth claims here, they have obtained valid consent. *Porter P.*, *supra.*

Thus, the crucial question is whether the defendant had a reasonable expectation of privacy in his bags that were in Barnes's

bedroom. It is well settled that an overnight guest maintains an expectation of privacy in luggage stored in a host's dwelling. See, e.g., *United States* v. *Davis*, 332 F.3d 1163, 1167-1168 (9th Cir. 2003); *United States* v. *Salinas-Cano*, 959 F.2d 861, 864-865 (10th Cir. 1992); *United States* v. *Wilson*, 536 F.2d 883, 884-885 (9th Cir.), cert. denied, 429 U.S. 982 (1976). See also 4 W.R. LaFave, Search and Seizure § 8.5(d), at 231-232 & n.104 (4th ed. 2004) ("Among the articles which it would seem would most commonly be deserving of the 'high expectation of privacy' label in the host-guest context would be the overnight bag or suitcase or similar object brought to the premises by the guest").

Although the bags in this case were not traditional luggage, there is no reasoned basis to draw a legal distinction between a guest's containers based on the materials from which they are made, their shape, or the mechanism by which they are closed. Cf. *Commonwealth* v. *Linton*, 456 Mass. 534, 557 (2010) (defendant held expectation of privacy in backpack he brought to his brother's house for extended visit). The Commonwealth makes no claim that the bags were not closed. We conclude that the defendant maintained a reasonable expectation of privacy in both his backpack and the shopping bag.

We reject the Commonwealth's argument that after Barnes asked the officers to inform the defendant that he was no longer welcome in her apartment owing to his alleged theft from her, his status as a houseguest was terminated and he thereby lost any expectation of privacy he may have enjoyed in belongings he stored there. That he was no longer welcome in Barnes's home may not have been known to the defendant at the time of the search and, therefore, could not have had any impact on his privacy expectations. Contrast *Commonwealth* v. *Molina*, 459 Mass. 819, 825-826 (2011).

The Commonwealth's reliance on *Commonwealth* v. *Mallory*, 56 Mass. App. Ct. 153 (2002), *S.C.*, 63 Mass. App. Ct. 1115 (2005), is inapposite. In that case, the defendant was found to have lost his reasonable expectation of privacy in a guest room when his host, armed with a weapon, chased the defendant from the house after learning he had raped the host's teenage daughter. In those circumstances, the host-guest relationship was destroyed, and the defendant demonstrably "[r]ecogniz[ed] his unwelcome

status in the home." *Id.* at 158. Here, the record gives no indication that the defendant knew or should have known at the time of the search that his status as Barnes's guest had changed.

Concluding that the defendant retained a reasonable expectation of privacy in his bags, we next consider whether the police search nevertheless was permissible because it was conducted under the authority of validly given consent. The bags were not lawfully subject to search merely because they had been left in plain view within a space that was subject to a search by consent. "In cases involving closed containers . . . the plain view doctrine may support the warrantless *seizure* of a container believed to contain contraband but any subsequent *search* of the concealed contents of the container must be accompanied by a warrant or justified by one of the exceptions to the warrant requirement" (emphasis in original). *Commonwealth* v. *Straw,* 422 Mass. 756, 762 n.3 (1996), quoting *United States* v. *Corral,* 970 F.2d 719, 725 (10th Cir. 1992).

The Commonwealth appears to argue that because Barnes gave police a valid consent to search her apartment, a point the defendant does not dispute, she also could consent to a search of the defendant's belongings found therein. This point was addressed in *Porter P.,* *supra.* As we stated, "Even if a coinhabitant of [a] home had actual authority to consent to a search of the home, the consent would not extend to a closed suitcase, overnight bag, or gym bag located inside the home that did not belong to the coinhabitant." *Id.* at 265 n.11, and cases cited. Barnes, who was not shown to have any interest in the defendant's bags, lacked actual authority to consent to their search, notwithstanding her valid consent to a search of her apartment, and the evidence in the bags should have been suppressed.

Although he did not object when the evidence was introduced at trial, the defendant's pretrial motion was sufficient to preserve the issue for appeal. See *Commonwealth* v. *Linton, supra* at 558. Therefore, we review to determine whether the error was harmless beyond a reasonable doubt, i.e., "whether the error might have had an effect on the jury or contributed to the verdicts, and whether the Commonwealth's evidence was ' "merely cumulative" of evidence properly before the jury,' . . . or was overwhelming without the erroneously admitted evidence." *Com-*

*monwealth* v. *Dagraca*, 447 Mass. 546, 553 (2006), quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987).

Items found in the defendant's bags and introduced at trial directly connected him to two residential burglaries and two instances of shoplifting. The objects were not cumulative of the Commonwealth's other evidence that the defendant participated in those crimes, which consisted primarily of testimony from King and Signor.[9] We cannot say that the improperly obtained evidence did not contribute to convictions of two indictments charging receipt of stolen property, two indictments charging larceny, one indictment charging receipt of a fraudulently obtained credit card, and one indictment charging identity fraud. The defendant therefore is entitled to a new trial on those charges.

*Conclusion.* The judgments of conviction on indictment nos. BECR2007-00202-2, -8, -12, -14, -16, and -18 are vacated and the verdicts are set aside. As to indictment no. BECR2007-00202-28, the judgment of conviction of larceny over $250 is vacated, and a judgment of conviction of larceny under $250 shall enter. The remaining judgments are affirmed. The case is remanded to the Superior Court for resentencing on the remaining convictions and further proceedings consistent with this opinion.

*So ordered.*

---

[9]Although Stephanie King and Brian Signor gave testimony linking the defendant to each of these offenses, that evidence was not overwhelming, as the jury could reasonably have concluded that it was offered to deflect responsibility for their own participation. We note that the jury voted to acquit the defendant of those charges where the only direct evidence of his guilt was the testimony of King and Signor.