NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-377                                        Appeals Court

COMMONWEALTH  vs.  JOSE HERNANDEZ.

No. 17-P-377.

Essex.     January 3, 2018. - April 27, 2018.

Present:  Wolohojian, Milkey, & Englander, JJ.

Firearms.  Constitutional Law, Search and seizure.  Search and
    Seizure, Consent, Container, Expectation of privacy.


Complaint received and sworn to in the Lynn Division of the
District Court Department on February 4, 2015.

A pretrial motion to suppress evidence was heard by
Cathleen E. Campbell, J., and the case was heard by her.


Carmine P. Lepore for the defendant.
Ronald DeRosa, Assistant District Attorney, for the
Commonwealth.


ENGLANDER, J.  This case presents the question whether the

defendant's coinhabitant could validly consent to a warrantless

search of a closed, unlocked suitcase located in a common closet

of a bedroom she shared with the defendant.  A warrantless

search of the suitcase yielded a gun, which was the basis of the

defendant's convictions.  A District Court judge ruled that the coinhabitant's consent was valid as to the suitcase, and that the seizure of the firearm was therefore lawful.  We affirm.

1.  Background.  a.  Incident.[1]  On February 3, 2015, at 11:00 A.M., Lynn police Officer William Stilwell responded to a call of a domestic threat at the defendant's apartment, and was met by Flor Prudencio, the victim.  Prudencio shared the one-bedroom apartment with the defendant and their three children.  The couple had lived there for three years.  The three children were present when Officer Stilwell spoke with Prudencio, but the defendant was at work.  Prudencio advised that the defendant would return in the late afternoon.

Prudencio reported that approximately three weeks earlier, she and the defendant had had an argument about the custody of the children.  During the argument, the defendant told Prudencio that "if he wasn't able to see the children . . . he would shoot her and kill her."  Prudencio went on to tell the officer that she was concerned because the defendant had access to a firearm.  Prudencio then brought the officer into the apartment's only

---

[1] As the sole issue on appeal is the denial of the defendant's motion to suppress, we take the facts from the motion judge's findings, together with uncontested testimony adduced at the evidentiary hearing where the judge explicitly or implicitly credited the witness's testimony.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007).

bedroom, which she shared with the defendant and the children. The bedroom had two beds and a single closet. Prudencio opened the closet door. Inside were men's and women's clothes, bags on the floor, and children's items; some of the items were Prudencio's.

After opening the closet door, Prudencio pointed to a suitcase on the top shelf of the closet, about five feet up; she stated that the defendant's firearm was located in the suitcase. Officer Stilwell pulled the suitcase down and brought it into the kitchen.

The suitcase was not locked, and did not have a locking mechanism. Prudencio testified that the suitcase was "easy to open," not with a zipper but "something you press down on," like a clasp. It did not have a name or tag on it.

Officer Stilwell opened the suitcase in Prudencio's presence. Prudencio stated that the firearm was inside a red "Huggies" container within the suitcase. Inside the Huggies container Officer Stilwell found a loaded revolver and a "baggie" of ammunition.[2] He confiscated the weapon "[b]ased on the domestic threat, the threat that was made that [the defendant] said that he was going to shoot her."

---

[2] There were also some papers in the suitcase, which Prudencio testified were the defendant's.

Prior to opening the suitcase, Officer Stilwell did not ask Prudencio to whom the suitcase belonged, nor did Prudencio state whose suitcase it was. At the suppression hearing Prudencio testified that the suitcase and the gun were the defendant's, and that she knew the defendant kept the firearm in the suitcase because on at least three prior occasions he had removed it from the suitcase, in front of her, and cleaned it.[3]

The defendant was charged with improper storage of a firearm, in violation of G. L. c. 140, § 131L(a) and (b); illegal possession of a firearm, in violation of G. L. c. 269, § 10(h); illegal possession of ammunition, in violation of G. L. c. 269, § 10(h); and threatening to commit a crime, in violation of G. L. c. 275, § 2.[4]

b. Pretrial and trial. Hernandez filed a motion to suppress all items seized from the apartment. After an evidentiary hearing where Officer Stilwell and Prudencio testified, the motion judge denied the defendant's motion, issuing written findings.

---

[3] The defendant never prohibited Prudencio from going into the suitcase, nor did the defendant instruct Prudencio she could not go inside the suitcase.

[4] The Commonwealth also charged the defendant with reckless endangerment of a child, in violation of G. L. c. 265, § 13L. This charge was dismissed before trial upon the defendant's motion.

The motion judge first found "it is clear that [Officer] Stilwell entered the home . . . with Prudencio's consent," and that "Prudencio had both actual and apparent authority over the apartment that she and Hernandez shared together and with their children." Regarding the search of the suitcase, the motion judge concluded that Prudencio and the defendant shared access to their home, bedroom, and closet, "as well as the contents of that closet which would include the suitcase." She specifically found that "[t]here was no evidence of any restriction upon Prudencio's access to that suitcase or what was inside."

After a jury-waived trial, the same judge found the defendant guilty on all four charges. This appeal followed.

2. Discussion. In reviewing an order on a motion to suppress, we accept the motion judge's subsidiary findings of fact, absent clear error, and then independently review the ultimate findings and conclusions of law. Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

In general, a search of a home without a warrant is invalid, but one exception is when the search is conducted with valid "consent." Commonwealth v. Rogers, 444 Mass. 234, 236-237 (2005). When the government claims that the search was justified by consent of a third party, rather than the defendant, the government has the burden to show that the third party actually consented through word or action, and that the

third party had actual or apparent authority to consent to the search.  See id. at 237-238; Commonwealth v. Santos, 465 Mass. 689, 694-696 (2013).

Here, the defendant acknowledges that Prudencio actually consented orally and, moreover, that she had authority, as the defendant's coinhabitant, to consent to a search of the apartment and of the closet.  But he contends, relying on Commonwealth v. Porter P., 456 Mass. 254 (2010), and Commonwealth v. Magri, 462 Mass. 360 (2012), that Prudencio's authority did not extend to the closed, unlocked suitcase.  In essence, he argues that the police were required to establish that Prudencio had separate authority over each closed container in the apartment despite having common authority over the whole of the premises.  Before addressing whether Porter P. and Magri provide support for the defendant's position, we briefly summarize the case law that existed before those cases were published.

The defendant's argument is at odds with the "common authority" doctrine adopted in a long line of cases beginning with United States v. Matlock, 415 U.S. 164 (1974), and running through decisions of this court and Porter P. itself.  In Matlock, the United States Supreme Court addressed whether a defendant's adult coinhabitant could validly consent to a search of the bedroom she shared with the defendant, and to the search

of a diaper bag found in the bedroom's closet.  Id. at 166-167.
The Court held that she could; consent could be obtained "from a
third party who possessed common authority over or other
sufficient relationship to the premises or effects sought to be
inspected."  Id. at 171.  The Court went on to explain that
consent based on common authority did not arise from "property
interest[s]," but from

> "mutual use of the property by persons generally having
> joint access or control for most purposes, so that it is
> reasonable to recognize that any of the co-inhabitants has
> the right to permit the inspection in his own right and
> that the others have assumed the risk that one of their
> number might permit the common area to be searched."

Id. at 171 n.7.

As indicated, the facts in Matlock involved a container
located in the coinhabitant's bedroom, and in holding the
consent valid the Supreme Court did not suggest that additional
or separate authority might be required to validate the search
of the container.  Indeed, the Court's reasoning was that
coinhabitants have "assumed the risk," vis-à-vis each other,
such that any of them can permit a search of a common area,
including items kept in such an area.

Matlock's reasoning was cited approvingly by this court in
Commonwealth v. Noonan, 48 Mass. App. Ct. 356, 362 (1999), in
the context of a police search of an apartment based upon the

consent of the defendant's coinhabitant (one Barbara), where we

stated:

> "They used the apartment just as an ordinary married couple would. Thus Barbara had the run of the place with presumptively lawful access to all parts of the apartment and its contents. So also she could give consent to a search to the same extent by other persons whether or not officers: where premises are jointly occupied, any occupant may consent 'in his own right' to a search, the other occupant having 'assumed the risk' of such action."

Ibid., quoting from Matlock, 415 U.S. at 171 n.7.

Other cases are in accord, finding searches reasonable on very similar facts to those at issue here. In United States v. Bass, 661 F.3d 1299, 1302-1307 (10th Cir. 2011), the defendant's coinhabitant authorized the search of the defendant's closed but unlocked "zipper bag," found in a "common area" of their home. The bag contained, among other things, the defendant's revolver. Id. at 1302. The Tenth Circuit Court of Appeals rejected the argument that the coinhabitant's consent to search the home could not extend to the closed but unlocked bag, reasoning that Matlock's "assumption of the risk" formulation extends at least to "that portion of the premises which by practice or agreement the other occupant generally uses." Id. at 1306 (quotation omitted). The court concluded that "when general authority is present, we should not look for 'metaphysical subtleties' to define the boundaries of that authority." 661 F.3d at 1306 (quotation omitted). See United States v. Fay, 410 F.3d 589,

589-590 (9th Cir. 2005) (no Fourth Amendment violation where coinhabitant consented to search of duffle bag on a shelf in an open laundry room).  See also Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 94-97 (2010) (defendant's mother had authority to consent to search of defendant's bedroom).

The reasoning of the Matlock line of cases was adopted in Porter P., where the court stated that "[a] third party has actual authority to consent to a warrantless search of a home by the police when the third party shares common authority over the home."  Porter P., 456 Mass. at 262.  The court went on to quote with approval Matlock's "assumption of the risk" rationale, before distinguishing Matlock on the ground that in Porter P., the person who provided the consent to search -- the director of the transitional shelter in which the defendant was staying -- was not a coinhabitant, and thus not able to validly consent to a search of the defendant's room.  Id. at 262, 266.

The reasoning of these cases reflects the common understanding that coinhabitants of a home have a greatly diminished expectation of privacy vis-à-vis each other, at least as to "common areas."  Coinhabitants accordingly can consent to searches in areas where they have "joint access or control for most purposes."  Porter P., 456 Mass. at 262, quoting from Matlock, 415 U.S. at 171 n.7.

Such joint access or control existed here.  There is no question of Prudencio's authority to consent to the search of her home, her bedroom, and her closet.  These were "common areas," which was readily apparent upon viewing the small apartment, and observing that Prudencio and her three children, in Noonan's words, "had the run of the place."  48 Mass. App. Ct. at 362.  Nor did Prudencio's authority to consent to a search of the family closet stop at the boundary of the suitcase.  In coinhabiting as he did, and leaving his gun unlocked in a closet used by all, the defendant made a "significant sacrifice of individual privacy" vis-à-vis Prudencio, and "assumed the risk" that she would access his belongings (the suitcase) or consent to a search of them.  See Bass, 661 F.3d at 1305-1306.

Neither Porter P. nor Magri leads to a different result. It is true that Porter P., while it adopts Matlock's reasoning, does state, in footnote 11, that a coinhabitant's consent to search a home would not extend to a suitcase "that did not belong to the coinhabitant."  Porter P., 456 Mass. at 265 n.11. That statement, however, must be read in the context of the case as a whole.  Porter P. on its facts did not involve consent given by a coinhabitant.  Moreover, the cases cited in footnote 11 did not involve coinhabitants with "joint access or control" over the space searched, such as in Matlock, Noonan, and Bass,

but rather involved the different relationship of a homeowner and an occasional guest.[5]  We accordingly do not read footnote 11 as broadly rejecting the line of cases, cited above, that rely on Matlock's rationale to validate searches on facts very similar to those before us.

The defendant also relies upon Commonwealth v. Magri, but in Magri the defendant also was not a coinhabitant but an overnight guest, and the court ruled that his host could not consent to a search of belongings he had left at the host's home.  See 462 Mass. at 366-367.  While Magri cites footnote 11 of Porter P., Magri's holding depends on the reasoning that an overnight guest (unlike the coinhabitants in the cases cited above) retains an expectation of privacy in his belongings vis-à-vis his host.  Id. at 366-368.[6]

---

[5] The two cases cited as support in footnote 11 of Porter P. are clearly distinguishable from the facts here.  In United States v. Davis, 332 F.3d 1163, 1170 (9th Cir. 2003), for example, not only was the defendant not a coinhabitant, but the contraband was not found in a common area and the consent to search was not given by anyone who shared the defendant's space. Davis actually distinguishes its facts from Matlock.  332 F.3d at 1169 n.4.  The second case cited in the Porter P. footnote is United States v. Salinas-Cano, 959 F.2d 861, 863-865 (10th Cir. 1992), which also involved an "occasional" guest, and which also distinguished its facts from Matlock.

[6] The rule sought by the defendant would mean that a police officer voluntarily admitted to search a home by a coinhabitant must nevertheless separately ask the basis of the coinhabitant's authority before opening any additional compartments or containers in the home.  The Supreme Judicial Court criticized

In short, when the statements from <u>Porter P</u>. and <u>Magri</u> are considered in context, we do not believe they support the defendant's position.  Accordingly, the judge did not err in concluding that the defendant's coinhabitant could and did validly consent to the search of the defendant's closed but unlocked suitcase located in the common closet of their shared bedroom in their home.

<u>Judgments affirmed</u>.

---

such a rule as impractical, in the analogous context of a warrantless search of an automobile based upon probable cause:

> "The defendant's interpretation of art. 14 would force the police in every motor vehicle search that turned up a closed container to impound and secure the vehicle while a warrant was obtained, <u>United States</u> v. <u>Ross</u>, [456 U.S. 798,] 821 n.28 [1982], not an unobtrusive procedure from the point of view of the defendant's privacy.  Such a rule would unnecessarily burden the police and criminal justice system, while providing defendants with insignificant protections against privacy intrusions."

<u>Commonwealth</u> v. <u>Cast</u>, 407 Mass. 891, 908 (1990).  See <u>United States</u> v. <u>Melgar</u>, 227 F.3d 1038, 1039-1040, 1042 (7th Cir. 2000) (consent to search hotel room extended to closed purse found under a mattress; "[a] contrary rule would . . . mean [the police] could never search closed containers within a dwelling [including hotel rooms] without asking the person whose consent is being given ex ante about every item they might encounter").