NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-177

COMMONWEALTH

vs.

OSCAR A. LOPEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was found guilty by a Superior Court jury of trafficking at least thirty-six, but less than one hundred grams of cocaine in violation of G. L. c. 94C, § 32E (b) (2). On appeal, he contends that the motion judge improperly denied his motion to suppress evidence and that the trial judge should have allowed his motion for a required finding of not guilty because the evidence was insufficient on the elements of constructive possession and possession with intent to distribute. We affirm.

Background. "[W]e accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Meas, 467

Mass. 434, 440, cert. denied, 574 U.S. 858 (2014).  We summarize the facts as found by the judge, supplemented by undisputed facts that the judge implicitly credited and that are consistent with his ultimate findings.  See Commonwealth v. Depiero, 473 Mass. 450, 452 n.3 (2016); Commonwealth v. Jones-Pannell, 472 Mass. 429, 430-431 (2015).[1]

The sole owner of one unit of a two-family home in Watertown (hereinafter, the mother) had allowed her daughter and the daughter's boyfriend, the defendant, to live in the residence and share one of the bedrooms, which the mother additionally used for storage, for approximately six years.  The defendant had a key only to the common exterior door of the residence, not the individual unit.[2]  The defendant apparently had a residence in Somerville, as reflected on his driver's license, and which officers confirmed through the Registry of Motor Vehicles.

On May 26, 2020, the mother obtained a restraining order against her daughter.  That evening, the defendant approached the mother's residence and unsuccessfully tried to open the

_____

[1] The facts recited herein are based on the same evidence presented at the suppression hearing and the trial, unless otherwise noted.

[2] The mother's residence has a common exterior door for the two-family residence leading to a vestibule and an interior front door that leads to her individual unit.

interior front door, then knocked and called out for the daughter.  The mother informed the defendant that her daughter was not home.  The defendant stated that he needed to get his jeans -- specifically, his "work pants" -- that he left in the bedroom.  The mother told him that neither her daughter nor the defendant was welcome at the residence and that he could enter only with a police escort.  The defendant left the area.

The next morning, the mother entered the bedroom to search for the defendant's "work pants."  She found three bags of what she believed to be drugs in the pants pocket and around the bedroom.  The bag located in the pants was golf ball-sized, while the other two bags were "significantly smaller," and each bag was knotted at the top.[3]  The mother put the bags on her kitchen counter and called the police.

When Watertown police officers arrived, the mother explained what she had found.  The mother consented in writing to a search of the residence.  The officers searched the bedroom and found on the floor of the room the defendant's pants, along with a pair of his sneakers and mail bearing the defendant's name with the Watertown address, which they seized.  The bags, the pants, and mail were entered into evidence at trial.

---

[3] That the bags were knotted and of different sizes was established at trial but was not before the motion judge at the suppression hearing.

3

Discussion.  1.  Motion to suppress.  The defendant argues that the motion judge erroneously denied his motion to suppress because the police violated his reasonable and subjective expectation of privacy and lacked valid consent when they searched the bedroom where some of his personal items were located.  We turn first to the issue of consent.

Regardless of a defendant's privacy interests, police may conduct a warrantless search with "the consent of a person with actual or apparent authority" over the searched area.[4]  See Commonwealth v. Porter P., 456 Mass. 254, 262 (2010).  "Consent may . . . be provided from a third party possessing 'common authority over or other sufficient relationship to the premises . . . .'"  Commonwealth v. Lopez, 458 Mass. 383, 392 (2010), quoting United States v. Matlock, 415 U.S. 164, 171 (1974).  "Common authority is mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched" (quotation and citation omitted).  Lopez, supra.

---

[4] Although consent must also be voluntary, Commonwealth v. Porter P., 456 Mass. 254, 270 (2010), the defendant did not raise -- and thus we do not address -- that aspect of consent.

4

Here, the searched premises was a bedroom previously occupied by the daughter and, "at certain times," the defendant. Throughout their occupancy, the mother maintained her own use of the room by storing boxes in it and entering the room to access those boxes. The mother asserted that she had access to the room. The evidence seized by the police -- pants, sneakers, and mail -- was found readily visible on the floor of the room.

Under these circumstances, the mother had actual authority to consent to the search. The search yielded evidence from the commonly accessed areas of the room; at a minimum, the police could reasonably have believed the mother was a co-user of that space, and "it is reasonable to recognize that . . . co-inhabitants ha[ve] the right to permit the inspection . . . and that the others have assumed the risk that one of their number might permit the common area to be searched." See Commonwealth v. Hernandez, 93 Mass. App. Ct. 172, 175 (2018), quoting Matlock, 415 U.S. at 171 n.7.

This court need not decide to what extent the mother had authority over any areas or containers which might have previously been set aside for the defendant's and the daughter's exclusive use. Cf. Commonwealth v. Magri, 462 Mass. 360, 368 (2012) (third party's consent to search does not extend to bags owned solely by defendant). The evidence here was found lying unobscured on the floor of the bedroom. See Commonwealth v.

5

Wahlstrom, 375 Mass. 115, 117 (1978) (evidence properly seized from area "accessible to" and "under [the] control" of third-party consenter).  Because the mother said she had access to the room and entered it to get her boxes, the police had a reasonable belief that the mother had common authority over the shared parts of the bedroom.[5]  See Commonwealth v. Ploude, 44 Mass. App. Ct. 137, 141 (1998) (landlord of commercial premises who stored items in locked back room that he accessed by walking through space leased to defendant had authority to consent to search of common area).  See also Wahlstrom, supra (third-party consenter need not have authority over premises "at least as great as that of the objecting defendant").[6]  As the items were in plain view from what the police at least reasonably believed was a shared area of the room, it was lawful to examine them, and, with probable cause to believe they were evidence of a crime, to seize them.

2.  Required finding of not guilty.  "In determining the validity of a claim challenging the sufficiency of the

_____

[5] Even if the officers were incorrect as to any information pertinent to the mother's actual authority, the search would still be valid under the doctrine of apparent authority.  See Porter P., 456 Mass. at 269-272.

[6] Because we hold that the mother had authority to consent to the search, we need not reach the issue of whether the defendant had a reasonable expectation of privacy in the bedroom.

6

Commonwealth's evidence at trial, we review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), cert. denied, 565 U.S. 1262 (2012), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 573 U.S. 937 (2014), S.C., 480 Mass. 231, cert. denied, 586 U.S. 1054 (2018).

As relevant here, to prove that the defendant trafficked in cocaine, the Commonwealth must prove beyond a reasonable doubt "that (1) the defendant knowingly or intentionally (2) possessed (actually or constructively) (3) [at least thirty-six, but less than one hundred grams] (4) of [cocaine] (5) with the specific intent to distribute it." Commonwealth v. Ortega, 441 Mass. 170, 174 n.7 (2004). See G. L. c. 94C, § 32E (b) (2). "Proof of constructive possession requires the Commonwealth to show 'knowledge coupled with the ability and intention to exercise dominion and control.'" Commonwealth v. Cullity, 470 Mass. 1022, 1023 (2015), quoting Commonwealth v. Gonzalez, 452 Mass. 142, 146 (2008). In addition, contraband may be jointly

7

possessed; possession need not be exclusive to the defendant.
See Commonwealth v. Dinnall, 366 Mass. 165, 168-169 (1974).

   a.  Possession.  This court has long held that evidence
that a defendant occupied a bedroom where drugs were found can
be sufficient to prove constructive possession.  See, e.g.,
Commonwealth v. Nichols, 4 Mass. App. Ct. 606, 613 (1976).

> "When contraband is found in a dwelling shared by a
> defendant and one or more other persons, a finder of fact
> may properly infer that the defendant is in possession of
> the contraband (not necessarily exclusive possession) from
> evidence that the contraband was found in proximity to
> personal effects of the defendant in areas of the dwelling,
> such as a bedroom or closet, to which other evidence
> indicates the defendant has a particular relationship."

Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986).  See
Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 99 (2010).

   Viewing the evidence in the light most favorable to the
Commonwealth, the jury were entitled to find the following.  The
defendant resided, at least off and on, at the mother's
residence for approximately six years.  When staying there, the
defendant occupied a bedroom which he shared with the daughter.
Present in the bedroom were the defendant's pants, mail
addressed to him, and sneakers.  The largest package of drugs
was found in his pants pocket.  It was thus permissible for the
jury to infer that the defendant occupied that bedroom and,
therefore, constructively possessed all the drugs.

8

b.  Intent to distribute.  "[P]ossession of a large amount of illegal drugs raises an inference of intent to distribute warranting a verdict of guilty."  Commonwealth v. Roman, 414 Mass. 642, 645 (1993).  Here, the police officers located approximately forty-two grams of cocaine in total, most of it contained in the larger bag.  Such a large and valuable quantity of cocaine alone could lead to an inference of the intent to distribute it.  Compare Commonwealth v. Sepheus, 468 Mass. 160, 164-165 (2014) (possession of 0.4 grams of cocaine considered "insufficient to warrant an inference of intent to distribute"), with Commonwealth v. Ridge, 37 Mass. App. Ct. 943, 945 (1994) (possession of 636.8 grams cocaine alone considered "sufficient to warrant the inference beyond a reasonable doubt that the defendant intended to distribute").

Additionally, the smaller two bags each contained approximately one gram of cocaine.  At the jury trial, an officer testified that street-level drug distributors often sell cocaine in one-half gram to one gram quantities in knotted plastic bags, which is consistent with the two smaller bags recovered from the bedroom.  The officer further explained that those small bags are generally filled from a larger "source" -- such as the bag of cocaine recovered from the defendant's pants.  See Commonwealth v. Gonzales, 33 Mass. App. Ct. 728, 731 (1992) ("the form of packaging is a recognized factor in the question

9

of intent to distribute").  See also <u>Commonwealth</u> v. <u>Stephens</u>, 451 Mass. 370, 387-388 (2008) (inference of intent to distribute permitted where portion of defendant's cocaine packaged in knotted smaller bags).

The jury could have rationally concluded that the defendant possessed the cocaine with an intent to distribute it.  See <u>Commonwealth</u> v. <u>Beckett</u>, 373 Mass. 329, 341 (1977) (inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable").[7]

<u>Judgment affirmed</u>.

By the Court (Rubin, D'Angelo & Toone, JJ.[8]),

Clerk

Entered:  October 3, 2025.

---

[7] The defendant's argument that the trial judge should have reduced his verdict does not rise to the level of appellate argument as required by Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  Accordingly, we need not address this argument.

[8] The panelists are listed in order of seniority.